**MISSOURI–KANSAS–TEXAS RAILROAD COMPANY and Missouri-Kansas-Texas Railroad Company of Texas, Plaintiffs,**

v.

**NATIONAL RAILROAD ADJUSTMENT BOARD et al., Defendants.**

No. 50 C 684.

United States District Court, N. D. Illinois, E. D.

Sept. 2, 1954.

As Amended Sept. 4, 1954.

As Corrected Oct. 20, 1954.

W. R. Howell, St. Louis, Mo., G. H. Penland, M. E. Clinton, Dallas, Tex., William J. Milroy, Chicago, Ill., for plaintiffs.

Carroll J. Donohue, Salkey & Jones, St. Louis, Mo., Herbert L. Stern, Jr., Chicago, Ill., Gottlieb & Schwartz, Chicago, Ill., James L. Crawford, Cincinnati, Ohio, for Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes.

Kenneth F. Burgess, Walter J. Cummings, Jr., William K. Bachelder, Chicago, Ill., Sidley, Austin, Burgess & Smith, Chicago, Ill., for Carrier Members, National Railroad Adjustment Board, Third Division.

Milton Kramer, Schoene & Kramer, Washington, D. C., William B. Goodstein, Asher, Gubbins & Segall, Chicago, Ill., for Order of Railroad Telegraphers.

BARNES, District Judge.

1. Plaintiff Missouri-Kansas-Texas Railroad Company [hereinafter called "MKT"] is a corporation of the State of Missouri, with its principal office and place of business in the City of St. Louis, Missouri. It owns and operates lines of railroad in interstate commerce and in intrastate commerce in the States of Missouri, Kansas and Oklahoma.

2. Plaintiff Missouri-Kansas-Texas Railroad Company of Texas [hereinafter called "MKT"] is a corporation of the State of Texas, with its principal office and place of business in the City of Dallas, Dallas County, Texas. It owns and operates lines of railroad in interstate commerce and in intrastate commerce in the State of Texas.

3. Defendant National Railroad Adjustment Board [hereinafter called "Board"] is an agency of the United States of America, created by Section

3, First of the Railway Labor Act of 1934, 45 U.S.C.A. § 153, First, with its headquarters in the City of Chicago, Cook County, Illinois.

4. Defendant Third Division of the National Railroad Adjustment Board [hereinafter called "Board"] is an agency of the United States of America, created by Section 3, First (h) of the Railway Labor Act of 1934, 45 U.S.C.A. § 153, First (h), with its headquarters in the City of Chicago, Cook County, Illinois.

5. Defendants C. P. Dugan, J. E. Kemp, R. M. Butler, W. H. Castle, E. T. Horsley, J. H. Sylvester, Gerald Orndorff, Roger Sarchet, C. R. Barnes, and J. W. Whitehouse, are members of the National Railroad Adjustment Board and members of the Third Division of that Board; they maintain their offices in the City of Chicago, Cook County, Illinois, and reside in one or more of the counties within the Northern District of Illinois. Defendants R. M. Butler, W. H. Castle, E. T. Horsley, C. R. Barnes, and J. W. Whitehouse, were substituted for original defendants R. H. Allison, C. C. Cook, A. H. Jones, A. J. Cunningham and A. R. Ferris, whose tenure of office terminated during these proceedings.

6. Defendant Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes [hereinafter called "BRC"] is an unincorporated association of clerks and other employees of MKT, and of other railroad companies, and of other employers, throughout the United States.

7. BRC has its principal office and place of business in the City of Cincinnati, Hamilton County, Ohio, but it has an office and does business in the City of Chicago, Cook County, Illinois.

8. BRC has submitted itself to the jurisdiction of the Court in this case.

9. BRC is the collective bargaining agent under the Railway Labor Act for the craft or class of employees commonly called "Clerks" on the lines of railroad operated by MKT and on the lines of other railroad companies throughout the United States. In those capacities, BRC makes collective bargaining agreements with MKT and other railroad companies. All members of that craft or class are subject to such agreements.

10. BRC has a special Bureau which selects claims against railroads and progresses them to the Board in order to procure awards which will establish principles and precedents for use by BRC on those railroads and on other railroads in obtaining compliance with similar agreement provisions.

11. Awards 3932, 3933, and 3934, rendered by the Board in Dockets CL–3714, CL–3715, and CL–3716, established the principle that employees represented by BRC have the right to perform station clerical work. BRC will use those awards as precedents.

12. The members of BRC constitute a class; there are more than 200,000 members of that class and they are too numerous to bring them all before the Court; and the members of that class have a common interest in the facts and law of this case.

13. Defendant G. B. Goble is one of the members of BRC constituting a class. He is also one of seven Vice Grand Presidents of BRC and is a member of its Grand Executive Council which has jurisdiction over the affairs of BRC.

14. Goble maintains an office in the City of Chicago, Cook County, Illinois, and he resides in McHenry County, Illinois.

15. Goble is sued individually, as an officer and managing agent of BRC, as a representative of the Grand Lodge, Subordinate Units, System Boards of Adjustment, District Boards of Adjustment, Terminal Boards of Adjustment, and Lodges, of BRC, and as a representative of the members of BRC constituting a class.

16. Over a period of fourteen years prior to his becoming Vice Grand President, Goble represented BRC on the Chicago and North Western Railroad System Board of Adjustment, first as a member, then as Vice General Chairman,

then as General Secretary-Treasurer, and then as General Chairman.

17. In 1935, Goble was assigned by the Grand President of BRC to duties of Grand Lodge Representative in the Chicago District. In 1936, the Grand Executive Council of BRC elected him to the position of Vice Grand President. He was elected Vice Grand President of BRC at the Toronto Convention in 1939; at the St. Louis Convention in 1943; at the Cincinnati Convention in 1947; and at the San Francisco Convention in 1951. The delegates to those conventions elected Goble; and they had been elected by members of BRC Lodges throughout the United States, including the BRC Lodges on MKT.

18. Goble is required by BRC's Constitution to perform such duties as the Grand President of BRC assigns to him, to do all in his power to promote the organization of BRC and advance its welfare, and to consult with and assist BRC's System Boards of Adjustment in securing adjustments of wage and schedule disputes.

19. As required by BRC's Constitution, Goble made full and complete printed reports of his official acts and work to each session of the Grand Lodge Convention of BRC. Those reports and his testimony in this case show:

(a) Since 1936, Goble, as Vice Grand President of BRC, has represented that Organization, on assignments from its Grand President, in controversies on 55 railroads, including:

> Atchison, Topeka and Santa Fe
> Chicago and Eastern Illinois
> Chicago and North Western
> Chicago, Burlington and Quincy
> Chicago Great Western
> Chicago, Milwaukee, St. Paul and Pacific
> Chicago, Rock Island and Pacific
> Chicago Union Station
> Erie
> Grand Trunk
> Great Northern
> Illinois Central
> Michigan Central

> Minneapolis & St. Louis
> Minneapolis, St. Paul, & Sault Ste. Marie
> New York Central
> Pennsylvania
> Pere Marquette
> St. Louis-San Francisco
> Wabash.

(b) Goble performed those duties in Washington, D. C. and at other places such as:

| State | City |
|---|---|
| Illinois: | Chicago; Springfield |
| Iowa: | Oelwein |
| Michigan: | Detroit; Escanaba |
| Minnesota: | Duluth; St. Paul |
| Missouri: | St. Louis |
| Ohio: | Cincinnati |
| Wisconsin: | Milwaukee |

(c) Goble's activities, as a member and as Vice Grand President of BRC, covered a variety of subjects affecting BRC, its members, and the class or craft represented by it, including:

(1) Representing BRC in elections to determine the collective bargaining agent for employees, and procuring recognition for BRC in other representation disputes, without the necessity of elections.

(2) Negotiating, revising, interpreting and applying collective bargaining agreements covering wages, rules, and working conditions.

(3) Participating in proceedings of the National Mediation Board relating to controversies between BRC and railroad companies over rules and wages.

(4) Handling claims and grievances arising out of collective bargaining agreements.

(5) Participating in arbitration cases under the Railway Labor Act, and sometimes acting as BRC's arbitrator in disputes with railroad companies over the making or revision of collective bargaining agreements.

(6) Protecting employees displaced by railroad consolidations or affected by the

coordination of facilities or the pooling of traffic.

(7) Representing BRC on a committee created for the purpose of providing greater labor representation on a railroad system hospital board, and dealing with problems of hospital administration.

(8) Advising and consulting with officers and members of BRC on all kinds of organization work.

(9) Assisting in the formation of a State Representative Committee for BRC.

(10) Representing BRC, during absences of its Grand President, in conferences and negotiations between the Labor Committee and the Railroad Management Committee, which resulted in the 1941 National Wage Increase for Non-Operating Railroad Employees.

(11) Representing BRC in national wage conferences and mediation proceedings which resulted in the 1945 national wage increases.

(12) Representing BRC in the wage dispute between the Cooperating Railway Labor Organizations and the Short Line Railroads, which was disposed of in accordance with the recommendations made by a Presidential Emergency Board.

(13) Representing BRC in negotiations between the Fourteen Cooperating Standard Railroad Labor Organizations and the Carriers Conference Committee, which resulted in the 1945 amendments to the National Vacation Agreement.

(14) Representing BRC on the National Vacation Committee, which dealt with questions arising under the National Vacation Agreement.

(15) Participating in conferences with representatives of the Railway Express Agency and International Brotherhood of Teamsters, concerning the representation of express drivers in Detroit, Michigan.

(16) Participating in proceedings which extended BRC's agreement to cover additional positions.

(17) Representing BRC in jurisdictional disputes with other organizations, including ORT.

20. Goble is such a member of the BRC class as will fairly insure the adequate representation in this cause of all members of said class.

21. Goble is a person whose relationship to BRC is such that it could reasonably be expected that he would give and he did give, notice of this action to BRC.

22. Goble is a person whose relationship to BRC is such that it could be reasonably expected that he would give notice of this action to BRC's Grand Lodge, Subordinate Units, System Boards of Adjustment, District Boards of Adjustment, Terminal Boards of Adjustment, and Lodges.

23. Defendant The Order of Railroad Telegraphers [hereinafter called "ORT"] is an unincorporated association of agents, telegraphers, and other employees of MKT and other railroad companies throughout the United States.

24. ORT has its principal office and place of business in the City of St. Louis, Missouri, but it has an office and does business in the City of Chicago, Cook County, Illinois.

25. ORT has submitted itself to the jurisdiction of the Court in this case.

26. ORT is the collective bargaining agent under the Railway Labor Act for the craft or class of employees commonly called "Telegraphers" on the lines of railroad operated by MKT and on the lines of other railroad companies throughout the United States. In those capacities, ORT makes collective bargaining agreements with MKT and with other railroad companies. All members of that craft or class are subject to such agreements.

27. ORT has a special Bureau which selects claims against railroads and progresses them to the Board in order to procure awards which will establish principles and precedents for use by ORT on those railroads and on other railroads in

obtaining compliance with similar agreement provisions.

28. Awards 4735 and 5014, rendered by the Board in Dockets TE–4540 and TE–4953, established the principle that employees represented by ORT have the right to perform station clerical work. ORT will use those awards as precedents.

29. The members of ORT constitute a class; there are more than 40,000 members of that class and they are too numerous to bring them all before the Court; and the members of that class have a common interest in the facts and law of this case.

30. Defendant H. C. Kearby is one of the members of ORT constituting a class. At the time of service of process upon him, Kearby was also Second Vice-President of ORT and was one of nine Vice-Presidents of that Organization. He retired as Second Vice-President of ORT in 1953 but he is still a member of ORT.

31. When this action was commenced and when Kearby was served with process, he resided in Cook County, Illinois, and he maintained an office in his home in that County.

32. Kearby is sued individually, as an officer and managing agent of ORT, as a representative of the Grand Division, Subordinate Divisions, System Divisions, Local Divisions, and Local Boards of Adjustment, of ORT, and as representative of the members of ORT constituting a class.

33. Kearby retired in 1953 and moved to Florida. At that time, he had been a Vice-President of ORT for more than 12 years. Kearby was elected by delegates to the Conventions of ORT who had been elected by members of ORT Lodges throughout the United States, including the ORT Lodges on MKT.

34. While a Vice-President of ORT, Kearby was required by ORT's Constitution to devote his entire time to the interest of ORT under instructions from its President.

35. Before his election as a Vice-President of ORT, Kearby was a Local Chairman of ORT for 5 years and a General Chairman of ORT for 12 years, both on the Chicago, Milwaukee, St. Paul and Pacific Railroad; and, in those capacities, Kearby interpreted ORT's collective agreement with that Company and handled claims and grievances based upon the rules and working conditions of that agreement.

36. As required by ORT's Constitution, Kearby made printed reports of his official acts and work to each regular session of the Grand Division of ORT. Those reports and his testimony in this case show:

(a) During the period 1940 to 1953, Kearby, as a Vice-President of ORT, represented that Organization on assignments from its President, in a multitude of controversies on 54 railroads, including:

Atchison, Topeka and Santa Fe
Atlantic Coast Line
Chicago, Burlington and Quincy
Chicago and Eastern Illinois
Chicago Great Western
Chicago and North Western
Chicago, Rock Island and Pacific
Colorado Southern
Denver & Rio Grande Western
Erie
Florida East Coast
Gulf, Mobile & Ohio
Illinois Central
Michigan Central
Missouri-Kansas-Texas
Missouri Pacific
New York Central
Northern Pacific
Pennsylvania
Pere Marquette
Pittsburgh & Lake Erie
Rutland
St. Louis Southwestern
Southern Pacific
Texas & Pacific
Union Pacific

(b) Kearby performed those duties in Washington, D. C. and at other places such as:

| State | City |
| --- | --- |
| Alabama: | Mobile |
| California: | Los Angeles; |
| | San Francisco |
| Colorado: | Denver |
| Florida: | St. Augustine |
| Illinois: | Chicago |
| Indiana: | Indianapolis |
| Michigan: | Detroit |
| Minnesota: | Duluth; |
| | Minneapolis; |
| | St. Paul |
| Missouri: | Kansas City; |
| | St. Louis |
| Nebraska: | Omaha |
| North Carolina: | Wilmington |
| Ohio: | Cincinnati |
| Pennsylvania: | Pittsburgh |
| Texas: | Dallas; |
| | Fort Worth; |
| | Houston; |
| | San Antonio |
| Washington: | Spokane |

(c) Kearby's activities, as a member and as a Vice-President of ORT, covered a variety of subjects affecting ORT, its members, and the class or craft represented by it, including:

(1) Negotiating rules and working conditions and making collective agreements on numerous railroads.

(2) Interpreting agreements between ORT and various railroads.

(3) Preparing ORT cases for submission to the National Mediation Board and representing ORT in more than 20 mediation cases on various railroads and in hearings before that Board in Washington, D. C.

(4) Representing ORT in negotiating agreements providing for employee representation in the administration of railroad hospital associations.

(5) Disposing of claims and grievances on various railroads in conferences with General Chairmen of ORT and railroad officials.

(6) Assisting General Chairmen of ORT in interpreting and applying ORT agreements on all types of claims.

(7) Negotiating supplements to ORT collective agreements on various railroads to include provisions of the National 40-Hour Week Agreement.

(8) Negotiating for increases in rates of pay of specific positions on various railroads.

(9) Acting as ORT's representative in hearings on line abandonment applications conducted by the Interstate Commerce Commission at various places, including Washington, D. C.

(10) Opposing applications to State Commissions for authority to close railroad stations.

(11) Preparing cases, in the office of ORT's President, for submission to the Third Division of the National Railroad Adjustment Board.

(12) Serving as ORT Member of the Third Division of the National Railroad Adjustment Board.

(13) Directing, from Peoria, Illinois, the activities of ORT members during the railroad strike on the Toledo, Peoria & Western, from October 1, 1945 to May 1, 1947.

(14) Conferring, at Dallas, Texas, with ORT General Chairman Thompson, and personally handling a dispute on MKT between ORT and the International Brotherhood of Electrical Workers.

(15) Gathering data for use by ORT in its unsuccessful effort to intervene in BRC cases before the Board, involving station clerical work; and handling disputes created between ORT and the Missouri Pacific Railroad Company when that Company transferred station clerical work from employees subject to its agreement with ORT to employees subject to its agreement with BRC.

37. H. C. Kearby is such a member of the ORT class as will fairly insure the adequate representation in this cause of all members of said class.

38. H. C. Kearby is a person whose relationship to ORT is such that it could

reasonably be expected that he would give, and he did give, notice of this action to ORT.

39. H. C. Kearby is a person whose relationship to ORT is such that it could be reasonably expected that he would give notice of this action to ORT's Grand Division, Subordinate Divisions, System Divisions, Local Divisions, and Local Boards of Adjustment.

40. Defendant R. B. Boyington is one of the members of ORT constituting a class. He is also a director of ORT and Chairman of its Board of Directors.

41. Boyington maintains an office in the City of Chicago, Cook County, Illinois, and he resides in Cook County, Illinois.

42. Boyington is sued individually, as an officer and managing agent of ORT, as a representative of the Grand Division, Subordinate Divisions, System Divisions, Local Divisions, and Local Boards of Adjustment, of ORT, and as a representative of the members of ORT constituting a class.

43. Boyinton was appointed a director in April 1944 to fill a vacancy. He was elected a director at the 1946 Convention of ORT by the delegates who had been elected by members of ORT Lodges throughout the United States, including ORT Lodges on MKT. On October 1, 1952, the directors elected Boyington as Chairman of the Board.

44. Boyington is also General Chairman of Subordinate Division 76 of ORT and is Division Chairman of ORT on the Chicago and North Western Railroad. He has been a General Chairman of ORT for 32 years and Local Chairman in the Chicago Terminal for 40 years.

45. In the capacity of Local Chairman, Boyington handled employee grievances with the General Chairman and railroad officers, and he also handled claims of employees based on alleged violations of collective agreements by the railroad.

46. As General Chairman, Boyington negotiated, signed and approved BRC collective agreements; interpreted or applied such agreements; and participated in mediation proceedings on disputes under them.

47. As required by ORT's Constitution, the Board of Directors made printed reports of all its official acts to each regular session of the Grand Division of ORT. Those reports and the testimony of Boyington in this case show:

(a) Many powers are conferred upon the Board of Directors of ORT by Article 13 of its Constitution. Among others, the Board is authorized to entertain all appeals from decisions of ORT's Grand Officers. While Boyington has been a member, the Board of Directors has entertained 68 appeals from decisions of the President of ORT. Those appeals involved disputes on many railroads, including:

Baltimore and Ohio
Boston & Maine
Chesapeake and Ohio
Chicago, Burlington and Quincy
Chicago, Milwaukee, St. Paul and Pacific
Chicago, Rock Island and Pacific
Delaware, Lackawanna & Western
Erie
Illinois Central
Louisiana and Arkansas
Louisville & Nashville
New York Central
Northern Pacific
Pennsylvania
St. Louis-San Francisco
Seaboard Air Line
Southern Pacific
Union Pacific
Wabash

(b) The appeals to the Board of Directors of ORT were from the following States:

California
Florida
Indiana
Iowa
Louisiana
Maine
Minnesota
Missouri

Nebraska
New York
Pennsylvania
South Dakota
Tennessee
Texas

(c) The activities of Boyington, as a member of the Board of Directors of ORT, have covered a wide range of subjects affecting ORT, its members, and the class or craft represented by it, including:

(1) Ruling on appeals from decisions of the President, regarding:

a. Interpretation of ORT's collective agreements as to seniority, displacement, and other employment rights.

b. Authority of General Chairmen to negotiate amendments to current collective agreements.

c. Validity of compromise settlement of dispute over request for upward adjustment of rates of pay of certain positions.

d. Reinstatement of discharged employee to his former position.

e. Legality of obtaining vote of members of General Committee by means of a mail ballot instead of at a meeting of the General Committee.

f. Extent of penalty which should be imposed on an officer of ORT whose removal was demanded by a member on the ground of unbecoming conduct.

g. Duty of a General Chairman to vote in order to break a tie vote of the General Committee, instead of declaring the measure lost by reason of a tie.

h. Whether appellant should have been called for service when a railroad permitted the use of teletype machines to receive incoming messages and other matters of record during hours when ORT employees were not assigned to duty.

i. Whether blocking of trains by switchtenders during the Laramie Avenue underpass construction by the City of Chicago, in 1949, was a violation of the Joint Relations Agreement of 1934 which ORT and the Brotherhood of Railroad Trainmen (BRT) negotiated for the purpose of providing a basis of settling jurisdictional disputes between ORT and BRT.

j. Should a railroad employee, while employed as a staff officer of ORT, be entitled to an indefinite leave of absence with right to return to his railroad position.

k. Should an improperly classified employee be removed from a position upon being properly classified or should the position be bulletined.

l. When an employee is discharged for cause and does not appeal, is he, upon being rehired, entitled to his previous standing on the seniority roster.

m. Was an election for the unexpired term of a Local Chairman valid when it included two districts before their consolidation had been duly consummated.

(2) Conferring with ORT President Leighty concerning the advisability of his accepting the Chairmanship of the Railway Labor Executives' Association, and approving his acceptance of that position.

(3) Conferring with ORT President and members of his staff, concerning schedule matters and appeal cases on the Delaware, Lackawanna & Western Railroad.

(4) Keeping fully informed of all business transactions of ORT.

(5) Requiring the officers of ORT to file bonds satisfactory to the Board of Directors and exercising charge of such bonds.

(6) Exercising full power to enforce the laws of ORT as they affect the work of the Grand Officers.

48. R. B. Boyington is such a member of the ORT class as will fairly insure the adequate representation in this cause of all members of said class.

49. R. B. Boyington is a person whose relationship to ORT is such that it could reasonably be expected that he would give notice of this action to ORT and to its Grand Division, Subordinate Divi-

sions, System Divisions, Local Divisions, and Local Boards of Adjustment.

50. Defendant J. W. Whitehouse is one of the members of ORT constituting a class. He is also Seventh Vice-President of ORT and a labor member of the Third Division of the National Railroad Adjustment Board.

51. • Whitehouse maintains an office and resides in the City of Chicago, Cook County, Illinois.

52. Whitehouse is sued individually, as an officer and managing agent of ORT, as a representative of the Grand Division, Subordinate Divisions, System Divisions, Local Divisions, and Local Boards of Adjustment, of ORT, and as a representative of the members of ORT constituting a class.

53. Whitehouse was appointed Seventh Vice-President of ORT, by its Board of Directors, to fill a vacancy, effective March 1, 1950. He was elected to that position at the regular session of the Grand Division of ORT in 1952 by the delegates who had been elected by the members of the Lodges of ORT throughout the United States, including those on MKT.

54. Whitehouse is required by ORT's Constitution to devote his entire time to the interests of ORT under instructions from its President.

55. Before his appointment as Seventh Vice-President of ORT, Whitehouse was ORT General Chairman on the following railroads: Kentucky & Indiana Terminal; Chicago, Indianapolis and Louisville; Elgin, Joliet & Eastern; and Chicago and Eastern Illinois. In those capacities, Whitehouse negotiated collective bargaining agreements between ORT and those Companies, interpreted those agreements, and handled claims and grievances based upon the rules and working conditions set forth in those agreements. He also assisted ORT President Leighty, members of his staff, and officers and representatives of other non-operating labor organizations in handling disputes submitted to the 40-Hour Week Committee in Chicago; and read, ana-lyzed, classified and indexed more than 5000 disputes submitted to that Committee for decision, involving all non-operating crafts and practically every railroad in the United States, as a result of the efforts of those organizations to conform individual agreements to the National 40-Hour Week Agreement.

56. As required by ORT's Constitution, Whitehouse made a printed report of his official acts and work as a Vice-President to the regular session of the Grand Division of ORT in June, 1952. That report and the testimony of Whitehouse in this case show:

(a) Since March 1, 1950, J. W. Whitehouse, as a Vice-President of ORT, has represented that Organization, on assignments from its President, in a multitude of controversies on 20 railroads, including:

> Baltimore & Ohio
> Central of Georgia
> Chesapeake and Ohio
> Chicago and North Western
> Chicago, Indianapolis and Louisville
> Delaware, Lackawanna & Western
> Gulf, Mobile and Ohio
> Louisville & Nashville
> Missouri-Kansas-Texas
> Missouri Pacific
> Norfolk Southern
> Union Pacific

(b) Whitehouse performed those duties in many places, including:

| State | City |
| --- | --- |
| Alabama: | Montgomery |
| Georgia: | Atlanta |
| Illinois: | Chicago |
| Indiana: | LaFayette |
| Kentucky: | Louisville |
| Maryland: | Baltimore |
| Michigan: | Manistee |
| Missouri: | St. Louis |
| New York: | New York |
| North Carolina: | Wilmington; Raleigh |
| Pennsylvania: | Scranton |
| Virginia: | Richmond |

(c) The activities of Whitehouse, as a Vice-President of ORT, covered a wide

range of subjects affecting ORT, its members, and the class or craft represented by it, including:

(1) Assisting ORT President, members of his staff, and officers and representatives of other non-operating labor organizations, in handling disputes submitted to the 40-Hour Week Committee in Chicago.

(2) Assisting ORT committees with numerous problems arising from application of the 40-Hour Week rules.

(3) Assisting ORT President and his staff in preparing submissions, oral arguments and rebuttals in various disputes taken to the Board as a result of efforts of ORT to supplement individual agreements to conform to the provisions of the National 40-Hour Week Agreement.

(4) Assisting with the preparation of submissions to the Board in disputes originating on MKT and other railroads.

(5) Conferring with ORT General Chairmen and railroad officials, and conforming collective agreements to the National 40-Hour Week Agreement.

(6) Arguing ORT cases before the Board.

(7) Assisting General Chairmen in opposing the discontinuance of station agencies.

(8) Representing ORT in protecting employees involved in the Pennsylvania-Grand Trunk-Monon coordination of towers at Maynard, Indiana.

(9) Conferring with General Chairmen and with officers of the Chesapeake and Ohio Railway Company, in connection with employee displacement problems resulting from the coordination of the communication services in Chicago.

(10) Conferring with General Chairmen and railroad officials concerning jurisdictional disputes resulting from the assignment of communication work to employees not represented by ORT.

(11) Handling claims and grievances of employees, including jurisdictional disputes affecting other organizations.

(12) Attending meetings of General Chairmen's Association and engaging in ORT organization work.

(13) Participating in conferences for the consolidation, revision, and unification of the agreements between ORT and the four railroad companies which merged into the Gulf, Mobile and Ohio Railroad Company.

57. J. W. Whitehouse is such a member of the ORT class as will fairly insure the adequate representation in this cause of all members of said class.

58. J. W. Whitehouse is a person whose relationship to ORT is such that it could reasonably be expected that he would give notice of this action to ORT and to its Grand Division, Subordinate Divisions, System Divisions, Local Divisions, and Local Boards of Adjustment.

59. The disputes submitted to the Board by BRC and ORT which resulted in Awards 3932, 3933, 3934, 4735 and 5014, raised this fundamental question: What class of employees (those represented by BRC or those represented by ORT) has the right to perform station clerical work. This has been a longstanding jurisdictional dispute between BRC and ORT on railroads throughout the United States which affects all members of BRC and ORT.

60. The jurisdictional dispute between BRC and ORT as to what class of employees has the right to perform station clerical work adversely affects the members and procedure of the Board, and, at the instigation of the President of BRC, resulted in the dismissal in 1942 of H. C. Kearby, ORT Board member.

61. Kearby was dismissed from the Board by majority vote of the chief executives of railroad labor unions, known as the Railway Labor Executives' Association, who select, control and discipline labor members of the Board, determine their policies as to Board procedure, and exert the power of the Association to enforce compliance with awards of the Board.

62. After the dismissal of H. C. Kearby as ORT Board member, ORT was left

without a representative on the Board, and ORT was denied the right to intervene in BRC cases before the Board.

63. In subsequent litigation, ORT sought to establish its right to intervene in BRC cases before the Board. As a result of those efforts, ORT was threatened, on charges brought by BRC, with expulsion from the American Federation of Labor.

64. ORT regained its place on the Board in 1949, after subscribing to BRC's program for Board procedure and joining BRC and other labor organizations in the following agreement:

"The Chief Executives of the organizations which take cases to the Third Division agreed that any disputes brought to that Division would be supported by the Labor representatives on that Division, provided the provisions of the agreement of the organization submitting the claim did sustain the position taken by the organization. It was further agreed that in the event the application of a sustaining award would result in a violation of the rules of another agreement, the second organization could also bring a claim to the Third Division to correct such violation and in the event the rules of the agreement involved supported the claim all of the Labor Members of the Board would support that claim. In other words the decision of the Labor Members on the Board would be based upon the rules in the agreement of the Organization bringing the claim and they would vote to sustain the claim if supported by the rules of the agreement involved or to deny the claim if not supported by the rules of the agreement involved which is the intent and purpose of the Railway Labor Act."

This was the same procedural program previously advocated by BRC and which the labor members of the Board followed from July, 1942 to September, 1949, during which period there was no ORT representative on the Board.

65. On October 11, 1943, BRC submitted to the Board, in Docket CL–2544, the following claims against MKT, relating to "incidental clerical work" at Altus, Oklahoma:

"(1) The carrier (Missouri-Kansas-Texas Railroad Company; Missouri-Kansas-Texas Railroad Company of Texas) violated and continues to violate its several agreements with the organization when on May 1, 1943, after due notice, it failed and refused to assign to positions covered by the said agreements, incidental clerical work, then and now performed at Altus, Oklahoma, by the Agent-Yardmaster, the so-called Telegrapher-Cashier and the so-called Telegrapher-Clerk; and

"(2) That the carrier (Missouri-Kansas-Texas Railroad Company; Missouri-Kansas-Texas Railroad Company of Texas) refused and continues to refuse to classify and restore the work to the scope and operation of the clerical agreement; and

"(3) That the carrier (Missouri-Kansas-Texas Railroad Company; Missouri-Kansas-Texas Railroad Company of Texas) shall now be required by an appropriate award and order of the Board to:

"(a) Recreate the position of Chief Clerk—rate $7.10 per day, and

"(b) Recreate the position of Cashier—rate $6.60 per day, and

assign to the said positions and restore to the scope and operation of all the agreements and rules extant between the respective parties, all of the incidental clerical work, as set forth in the Statement of Fact, there to remain until removed therefrom by the proper processes set forth in the agreement (Rule 78) and the Railway Labor Act—1934—amended; and

"(4) That the said positions of Chief Clerk and Cashier be advertised and assigned under the appro-

priate rules of the agreement as of May 1, 1943, and that any and all other employes adversely affected by the illegal and unlawful act of the carrier in assigning the said work and duties to positions and or persons not covered by the clerical agreement, shall be reimbursed for all their money losses."

66. By letter dated November 29, 1943, V. O. Gardner, President of ORT, informed the Board that certain employees of MKT represented by ORT were involved in the dispute filed with the Board by BRC; that those employees had expressed themselves as being materially affected by the outcome of that dispute; that they had signified a desire to present their interest before the Board when hearings were held or other adjudicatory action was taken on BRC's claim; that said employees desired to be represented before the Board by ORT, through its duly accredited officers or agents; that there were parties other than the claimant and MKT who were interested and involved in the dispute and who would be affected by an award; and Gardner expressed a desire to be notified promptly of any action by the Board so that ample opportunity would be afforded such employees or their representatives to participate in any hearings or deliberations which might be conducted by the Board.

Gardner enclosed with his letter of November 29, 1943, separate letters dated November 20, 1943, each addressed to the Board by G. M. Singletary, J. C. Parks, and E. Dowdy, who held the positions of Agent-Yardmaster, Telegrapher-Cashier, and Telegrapher-Clerk, respectively, for MKT at Altus, Oklahoma. Each of those letters quoted BRC's claim, as set forth in Finding 65, then pending before the Board, and each letter concluded with the following three paragraphs:

"I am involved in this dispute for the reason that I am one of the employees referred to in the above claim, and I consider that my interests and rights will be adversely affected and placed in jeopardy if this claim should be sustained.

"I therefore respectfully request a hearing as provided for by the Railway Labor Act, which procedure is in accord with an opinion given on the subject by the Attorney General of the United States.

"Being unable to appear in person before your Division, I hereby authorize The Order of Railroad Telegraphers, its officers or agents, to act as my duly accredited representative at any or all hearings on said claim. I delegate to The Order of Railroad Telegraphers full authority to appear thereat as my counsel and file briefs in my behalf."

67. In eight dockets, including CL-2544, the Board deadlocked on the issue of giving notice of hearings to employees or Organizations other than those named as parties to the disputes. As stated in the Board's minutes of March 16, 1944, the issue was:

"Dockets CL-2374, CL-2379, CL-2400, CL-2425, MW-2367, CL-2499, CL-2526, CL-2527 and CL-2544 are deadlocked on the issue of giving notice to persons or organizations, other than parties to the disputes, whose interests may be affected by awards on the merits. The Carrier Members take the position that binding and conclusive awards can be rendered only after notice given to all whose rights may be involved."

The Board, with Referee Bruce Blake sitting as a member, decided that the dockets should be set down for hearings on the merits, without notice to anyone except those parties named in the disputes. Accordingly, notice of the hearing in Docket CL-2544 was given to BRC and MKT, but no notice was given to ORT, or to its officers, agents, representatives, or members, or to G. M. Singletary, or to J. C. Parks, or to E. Dowdy.

68. In its "Statement of Facts" in Docket CL-2544, MKT declared: (1) that its agreement with ORT antedated its agreement with BRC; (2) that its

telegraph employees had always performed and were then performing, in varying volume and often for the major part of their tour of duty, clerical work of practically every character; (3) that this was true before, at the time of, and since adoption of the original BRC agreement and the revisions thereof; and (4) that employees holding the positions of Agent-Yardmaster, Telegrapher-Cashier, and Telegrapher-Clerk at Altus, Oklahoma, always had performed and were then performing clerical work in varying degrees.

69. Under the heading "Carrier's Position" in Docket CL–2544, MKT asserted that the general performance of clerical work by employees under ORT's agreement was a long, widespread, and well-known practice before MKT had any agreement with BRC; and that BRC for many years had acquiesced in the performance of general clerical work, without restrictions as to volume, by employees of practically every job classification under ORT's agreement.

70. The Board held a hearing on the merits of BRC's claim in Docket CL–2544. BRC and MKT, acting by and through their representatives, were the only parties who appeared and participated in that hearing.

71. After a hearing on the merits, the Board, with Referee Bruce Blake sitting as a member, on June 1, 1944, rendered Award 2597 in Docket CL–2544. The Board adhered to its former decision that notice of hearing should be given only to parties named in the dispute, but the Board, in accordance with its decision in Award 2596, Docket CL–2527, dismissed the case, without prejudice, because: (1) ORT had a vital interest in the outcome of the dispute; (2) to sustain the claim would deprive ORT and its members of most substantial and valuable rights; and (3) to deprive them of such rights, without giving them an opportunity to be heard, would be subversive of democratic principles and processes.

72. On June 29, 1944, BRC submitted to the Board, in Docket CL–2751, the following claims against MKT relating to "incidental clerical work" at Atoka, Oklahoma:

"(1) The carrier (Missouri–Kansas-Texas Railroad Company, Missouri-Kansas-Texas Railroad Company of Texas) violated and continues to violate its several agreements with the organization, when on September 14, 1943, after due notice, it failed and refused to assign to positions covered by the said agreements, incidental clerical work then and now performed at Atoka, Oklahoma, by employes working outside the scope of the clerical agreement; and,

"(2) That the carrier (Missouri-Kansas-Texas Railroad Company; Missouri-Kansas-Texas Railroad Company of Texas) refused and continues to refuse to classify and restore the work to the scope and operation of the clerical agreement; and,

"(3) That the carrier (Missouri-Kansas-Texas Railroad Company, Missouri-Kansas-Texas Railroad Company of Texas) shall now be required by an appropriate award and order of the Board to create and maintain appropriate positions under the clerical agreement and assign to the said positions and restore to the scope and operation of all the agreements and rules extant between the respective parties, all of the incidental clerical work, as set forth in the Statement of Fact, there to remain until removed therefrom by the proper processes set forth in the agreement (Rule 78) and the Railway Labor Act—1934—amended; and,

"(4) That the said positions shall be advertised and assigned under the appropriate rules of the agreement as of September 14, 1943, and that any and all employes adversely affected by the illegal and unlawful act of the carrier in assigning the said work and duties to the positions and

or persons not covered by the clerical agreement, shall be reimbursed for all their money losses."

73. In its "Statement of Facts" in Docket CL–2751, MKT declared: (1) that its agreement with ORT antedated its agreement with BRC; (2) that its telegraph employees had always performed and were then performing, in varying volume and often for the major part of their tour of duty, clerical work of practically every character; and (3) that this was true before, at the time of, and since adoption of the original BRC agreement and the revisions thereof.

74. Under the heading "Carrier's Position" in its original submission in Docket CL–2751, MKT advised the Board that ORT "has a direct and substantial interest in this case; and that it should be made a party hereto"; and MKT asserted that the general performance of clerical work by employees under ORT's agreement was a long, widespread and well-known practice before MKT had any agreement with BRC; and that BRC for many years had acquiesced in the performance of general clerical work, without restrictions as to volume, by employees of practically every job classification under ORT's agreement.

75. On July 31, 1944, BRC requested the Board's permission to withdraw the case covered by Docket CL–2751. This request was granted and, on August 2, 1944, that case was dismissed by Award 2650.

76. On June 29, 1944, BRC submitted to the Board, in Docket CL–2752, the following claims against MKT relating to "incidental clerical work" at Junction City, Kansas; Chanute, Kansas; Lockhart, Texas; and Stamford, Texas:

"(1) The carrier (Missouri-Kansas-Texas Railroad Company; Missouri-Kansas-Texas Railroad Company of Texas) violated and continues to violate its several agreements with the organization, when on October 4, 1943, after due notice, it failed and refused to assign to positions covered by the said agreements, incidental clerical work then and now performed at Junction City, Kansas, Chanute, Kansas, Lockhart, Texas, Stamford, Texas, by employes working outside the scope of the clerical agreement; and,

"(2) That the carrier (Missouri-Kansas-Texas Railroad Company, Missouri-Kansas-Texas Railroad Company of Texas) refused and continues to refuse to classify and restore the work to the scope and operation of the clerical agreement; and,

"(3) That the carrier (Missouri-Kansas-Texas Railroad Company, Missouri-Kansas-Texas Railroad Company of Texas) shall now be required by an appropriate award and order of the Board to create and maintain appropriate positions under the clerical agreement and assign to the said positions and restore to the scope and operation of all the agreements and rules extant between the respective parties, all of the incidental clerical work, as set forth in the Statement of Fact, there to remain until removed therefrom by the proper processes set forth, in the agreement (Rule 78) and the Railway Labor Act—1934—amended; and

"(4) That the said positions shall be advertised and assigned under the appropriate rules of the agreement as of October 4, 1943, and that any and all employes adversely affected by the illegal and unlawful act of the carrier in assigning the said work and duties to the positions and or persons not covered by the clerical agreement, shall be reimbursed for all their money losses."

77. In its "Statement of Facts" in Docket CL–2752, MKT declared: (1) that its agreement with ORT antedated its agreement with BRC; (2) that its telegraph employees had always performed and were then performing, in varying volume and often for the major part of their tour of duty, clerical work

of practically every character; and (3) that this was true before, at the time of, and since adoption of the original BRC agreement and the revisions thereof.

78. Under the heading "Carrier's Position" in its original submission in Docket CL–2752, MKT advised the Board that ORT "has a direct and substantial interest in this case; and that it should be made a party thereto"; and MKT asserted that the general performance of clerical work by employees under ORT's agreement was a long, widespread and well-known practice before MKT had any agreement with BRC; and that BRC for many years had acquiesced in the performance of general clerical work, without restrictions as to volume, by employees of practically every job classification under ORT's agreement.

79. On July 31, 1944, BRC requested the Board's permission to withdraw the case covered by Docket CL–2752. This request was granted and, on August 2, 1944, that case was dismissed by Award 2651.

80. On April 17, 1947, BRC submitted to the Board in Docket CL–3714 the identical claims quoted in Finding 65 relating to "incidental clerical work" at Altus, Oklahoma, which claims were first submitted to the Board on October 11, 1943, in Docket CL–2544, and dismissed, without prejudice, on June 1, 1944, by Award 2597.

81. BRC's ex parte submission in Docket CL–3714, and other documents filed by BRC in that docket, showed that ORT and employees of MKT subject to the collective agreement between MKT and ORT were involved in the dispute and that, in order to comply with an award in favor of BRC, MKT would be required to take clerical work away from employees subject to ORT's agreement and to assign the same clerical work to employees subject to BRC's agreement.

82. In its "Statement of Facts" in Docket CL–3714, MKT adopted all of its statements of fact in Docket CL–2544, including those set forth in Finding 68. MKT also called the Board's attention to Award 2597 which dismissed, without prejudice, the identical claims presented in Docket CL–2544 because: (1) ORT had a vital interest in the outcome of the dispute; (2) to sustain the claims would deprive ORT and its members of most substantial and valuable rights; and (3) to deprive them of such rights, without giving them an opportunity to be heard, would be subversive of democratic principles and processes.

83. Under the heading "Position of Carrier" in its submission in Docket CL–3714, MKT called the Board's attention to the absence of ORT, in these words:

"This claim * * * has not made and does not contemplate making The Order of Railroad Telegraphers a party to the action, but rather seeks to exclude that organization.

"No notice is given to a party to be affected. No opportunity is given such party to be heard and present every available defense."

84. Notice of the hearing in Docket CL–3714 was given to BRC and MKT but no notice was given to ORT, or to its officers, agents, representatives, or members, or to the persons holding the affected positions of Agent-Yardmaster, Telegrapher-Cashier, and Telegrapher-Clerk at Altus, Oklahoma.

85. The Board held a hearing on the merits of BRC's claims in Docket CL–3714. BRC and MKT, acting by and through their representatives, were the only parties who appeared and participated in that hearing.

86. On June 10, 1948, the Board, with Referee James M. Douglas sitting as a member thereof, rendered Award 3932 in Docket CL–3714, sustaining claims (1), (2), and (3), and all of claim (4) except the demand for money losses. On the same date, the Board issued an Order directing MKT to make that award effective.

87. The Board issued Award 3932, and the Order accompanying that Award, without giving ORT and the Agent-Yardmaster, Telegrapher-Cashier, and

Telegrapher-Clerk at Altus, Oklahoma, an opportunity to be heard in Docket CL–3714.

88. At the request of BRC, the Board, with Referee James M. Douglas sitting as a member thereof, on December 20, 1949, issued Interpretation No. 1 to Award 3932 in Docket CL–3714, declaring that "the Award ruled in effect":

> "1. That the clerical work in question should have been assigned to positions under the Clerks' Agreement, and Carrier violated such Agreement by permitting the three employes under the Telegraphers' Agreement at Altus to perform it.
>
> "2. That Carrier improperly refused to restore such work to the Clerks.
>
> "3. That Carrier was ordered to recreate the positions of Chief Clerk and of Cashier at Altus, and to restore such work to those positions.
>
> "4. That Carrier was ordered to advertise and assign such positions to Clerks, but without liability for retroactive penalties."

There was no hearing on BRC's request for this interpretation and the Board gave no notice of the filing of this request to ORT, or to its officers, agents, representatives, or members, or to the persons holding the affected positions of Agent-Yardmaster, Telegrapher-Cashier, and Telegrapher-Clerk at Altus, Oklahoma.

88½. On November 23, 1949, MKT replied to BRC's request for an interpretation of Award 3932. Among other things, MKT adopted the "position and defenses" which it had urged in Dockets CL–2544 and CL–3714, as set forth in Findings 68–69 and 82–83, and cited the following cases in support of its position: Hunter v. Atchison, T. & S. F. Ry. Co., D.C., 78 F.Supp. 984, Id., 7 Cir., 171 F.2d 594, certiorari denied Shepherd v. Hunter, 337 U.S. 916, 69 S.Ct. 1157, 93 L.Ed. 1726; Templeton v. Atchison, T. & S. F. Ry. Co., D.C., 84 F.Supp. 162; Reynolds v. Denver & R. G. W. R. Co., 10 Cir., 174 F.2d 673; Ramsey v. Chesapeake & O. R. Co., D.C., 75 F.Supp. 740; Southern Pacific Co. v. Bishop et al., U.S.Dist. Ct.Northern Dist. of Ill., Eastern Division;

MKT followed the citation of these cases with these statements:

> "In the case of Hunter v. Atchison, T. & S. F. Ry. Co., Shepherd et al., the Seventh Circuit Court of Appeals declared Award No. 6640 of the First Division, National Railroad Adjustment Board, void and permanently enjoined enforcement because train porters adversely affected by the award had not been given notice of the hearing and an opportunity to be heard as required by due process of law.
>
> "In Templeton v. Atchison, T. & S. F. Ry. Co., cited above, the U. S. Court held awards Nos. 6635, 6637, 6638, and 6639 of First Division, NRAB, void because employes represented by *Brotherhood of Railway & Steamship Clerks, Freight Handlers, Express & Station Employes,* who were adversely affected, had not been given notice and hearing in accordance with due process of law.
>
> "No notice was ever given any employe of hearing in this case and the award can not be used in behalf of any employe. It is elemental that it is not within the power of any tribunal to make a binding adjudication of the rights in personam of parties not before it by due process of law; National Licorice Co. v. National Labor Relations Board, 309 U.S. 350, at page 362, 60 S.Ct. 569, 84 L.Ed. 799; Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565; Riverside & Dan River Cotton Mills v. Menefee, 237 U.S. 189, 35 S.Ct. 579, 59 L.Ed. 910; State of Arizona v. State of California, 298 U.S. 558, 571, 572, 56 S.Ct. 848, 80 L.Ed. 1331; Elgin, J. & E. Ry. Co. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886."

On December 3, 1949, BRC answered the above mentioned reply of MKT. Among

other things, BRC attempted to distinguish the Hunter case, and also made the following statement:

"A careful reading of the carrier's (MKT) letter of November 29, 1949, very conclusively shows the necessity for the requested interpretation for the reason that, the Award notwithstanding, the carrier is still insisting that it has the same right now that it had under the *National Agreement* to assign the work of writing and calculating incident to keeping records, accounts, etc., to agents and telegraphers, as was urged by it prior to the rendition of Award No. 3932." [Finding 88½ added Sept. 4, 1954.]

89. On April 17, 1947, BRC submitted to the Board, in Docket CL–3715, the identical claims quoted in Finding 76, relating to "incidental clerical work" at Junction City, Kansas; Chanute, Kansas; Lockhart, Texas; and Stamford, Texas; which claims were first submitted to the Board on June 29, 1944, in Docket CL–2752, and dismissed on August 2, 1944, at the request of BRC by Award 2651.

90. BRC's ex parte submission in Docket CL–3715, and other documents filed by BRC in that docket, showed that ORT and employees of MKT subject to the collective agreement between MKT and ORT were involved in the dispute and that, in order to comply with an award in favor of BRC, MKT would be required to take clerical work away from employees subject to ORT's agreement and to assign the same clerical work to employees subject to BRC's agreement.

91. In its "Statement of Facts" in Docket CL–3715, MKT adopted all its statements of fact in Docket CL–2752, including those set forth in Finding 77. MKT also called the Board's attention to Award 2597 which dismissed similar claims in Docket CL–2544 because: (1) ORT had a vital interest in the outcome of the dispute; (2) to sustain the claims would deprive ORT and its members of most substantial and valuable rights;

and (3) to deprive them of such rights, without giving them an opportunity to be heard, would be subversive of democratic principles and processes.

92. Under the heading "Position of Carrier" in its submission in Docket CL–3715, MKT called the Board's attention to the absence of ORT, in these words:

"This claim * * * has not made and does not contemplate making The Order of Railroad Telegraphers a party to the action, but rather seeks to exclude that organization.

"No notice is given to a party to be affected. No opportunity is given such party to be heard and present every available defense";

and MKT adopted its position as stated in Docket CL–2752, including the matters and things set forth in Finding 78.

93. Notice of the hearing in Docket CL–3715 was given to BRC and MKT but no notice was given to ORT, or to its officers, agents, representatives, or members, or to the persons holding the positions of Agent and Telegrapher-Cashier at Chanute, Kansas; Agent-Telegrapher at Junction City, Kansas; Agent-Telegrapher, and Telegrapher-Cashier at Lockhart, Texas; and Agent, Telegrapher-Cashier, and Telegrapher-Clerk at Stamford, Texas.

94. The Board held a hearing on the merits of BRC's claims in Docket CL–3715. BRC and MKT, acting by and through their representatives, were the only parties who appeared and participated in that hearing.

95. On June 10, 1948, the Board, with Referee James M. Douglas sitting as a member thereof, rendered Award 3933 in Docket CL–3715, sustaining claims (1), (2), and (3), and all of claim (4) except the demand for money losses. On the same date, the Board issued an Order directing MKT to make that award effective.

96. The Board issued Award 3933, and the Order accompanying that Award, without giving ORT and the Agent, and Telegrapher-Cashier, at Chanute, Kan-

sas; Agent-Telegrapher at Junction City, Kansas; Agent-Telegrapher, and Telegrapher-Cashier at Lockhart, Texas; and Agent, Telegrapher-Cashier, and Telegrapher-Clerk at Stamford, Texas, an opportunity to be heard in Docket CL–3715.

97. On April 17, 1947, BRC submitted to the Board, in Docket CL–3716, the identical claims quoted in Finding 72, relating to "incidental clerical work" at Atoka, Oklahoma, which claims were first submitted to the Board on June 29, 1944, in Docket CL–2751, and dismissed on August 2, 1944, at the request of BRC, by Award 2650.

98. BRC's ex parte submission in Docket CL–3716, and other documents filed by BRC in that docket, showed that ORT and employees of MKT subject to the collective agreement between MKT and ORT were involved in the dispute and that, in order to comply with an award in favor of BRC, MKT would be required to take clerical work away from employees subject to ORT's agreement and to assign the same clerical work to employees subject to BRC's agreement.

99. In its "Statement of Facts" in Docket CL–3716, MKT adopted all its statements of fact in Docket CL–2751, including those set forth in Finding 73. MKT also called the Board's attention to Award 2597 which dismissed similar claims in Docket CL–2544 because: (1) ORT had a vital interest in the outcome of the dispute; (2) to sustain the claims would deprive ORT and its members of most substantial and valuable rights; and (3) to deprive them of such rights, without giving them an opportunity to be heard, would be subversive of democratic principles and processes.

100. Under the heading "Position of Carrier" in its submission in Docket CL–3716, MKT called the Board's attention to the absence of ORT, in these words:

"This claim * * * has not made and does not contemplate making The Order of Railroad Telegraphers a party to the action, but rather seeks to exclude that organization.

"No notice is given to a party to be affected. No opportunity is given such party to be heard and present every available defense";

and MKT adopted its position as stated in Docket CL–2751, including the matters and things set forth in Finding 74.

101. Notice of the hearing in Docket CL–3716 was given to BRC and MKT but no notice was given to ORT, or to its officers, agents, representatives, or members, or to the persons holding the affected positions of Agent and Telegrapher-Clerk at Atoka, Oklahoma.

102. The Board held a hearing on the merits of BRC's claims in Docket CL–3716. BRC and MKT, acting by and through their representatives, were the only parties who appeared and participated in that hearing.

103. On June 10, 1948, the Board, with Referee James M. Douglas sitting as a member thereof, rendered Award 3934 in Docket CL–3716, sustaining claims (1), (2), and (3), and all of claim (4) except the demand for money losses. On the same date, the Board issued an Order directing MKT to make that award effective.

104. The Board issued Award 3934, and the Order accompanying that Award, without giving ORT, and the Agent and Telegrapher-Clerk at Atoka, Oklahoma, an opportunity to be heard in Docket CL–3716.

105. BRC, acting by and through A. J. Pickett, General Chairman of BRC on MKT, interpreted Awards 3932, 3933, and 3934, as applying to all stations on MKT. Only six stations were named in those awards. On June 22, 1948, Pickett circularized "All Division Chairmen" on MKT, sending them copies of Awards 3932, 3933, and 3934, and instructing them as follows:

"Inasmuch as it has legally and lawfully (been) determined that our (BRC) agreement comprehends in its coverage all incidental clerical work, it is incumbent upon you to

bring about one hundred per cent enforcement of this fact. Will each of you therefore as promptly as is possible make or have made a study of the clerical work performed by the agents, telegraph-operators and others at the following points * * (naming 33 MKT stations in Missouri, Kansas, Oklahoma and Texas) and any and all other points on your division where you have any information about the violation of our agreement with respect to the question covered by the enclosed decisions.

"I appreciate that it will be quite a job to get this information together but at points where we have members working you can address communications to them and secure the information from them. Be particularly sure to tell them that you want an exact detail of the work performed by operators and agents so that a study will stand up under the closest investigation. Please give this matter your prompt attention and let me have the information at your earliest as it is necessary that it be in my possession when I meet the management to undertake a settlement on this question."

106. On June 26, 1948, Pickett conferred with A. F. Winkel, Assistant General Manager of MKT, about Awards 3932, 3933, and 3934. Following that conference and on the same day, Pickett prepared, signed and handed Winkel a memorandum setting forth his interpretation of the awards. Among other things, Pickett said:

"I think that a careful study of the Awards in the light of the pleadings of both parties clearly and conclusively indicates that it was the position of the Referee that at any situation (station) on the railroad where clerical work occurred that the carrier is under legal obligation to create clerical positions to perform such work whether it be there presently or occurs in the future."

Pickett's memorandum also sets forth the following question and answer:

"*Mr. Winkel asking question:*

"Mr. Pickett, in order to have a clear understanding on just what you mean, do I understand from your remarks, that once clerical positions are established, that agents and telegraphers are prohibited from performing any clerical duties which they might have performed prior to the establishment of clerical positions?"

"*Mr. Pickett answers:*

"Mr. Winkel, I go farther than that, it is our position that when the Clerical agreement was signed that all clerical work incidental to keeping records and accounts on the railroad is covered by our agreement * * * Therefore it is my position that our agreement legally and lawfully covers all incidental clerical work of a nature incidental to the keeping of records and accounts irrespective of where it is found, or who is performing it at the present time, or previously performed it."

To comply with Pickett's interpretation of Awards 3932, 3933, and 3934, MKT would have to create 171 clerical jobs.

107. By letter dated June 28, 1948, Pickett put Winkel on notice that, if MKT did not comply with Awards 3932, 3933, and 3934 by August 1, 1948, claims would be filed after that date on behalf of all employees adversely affected by such non-action of MKT. In that letter, Pickett said in part:

"This letter, therefore, is notice to the carrier that all of said positions, ordered created by the said awards, shall be advertised and assigned under the appropriate rules of the agreement as of August 1, 1948; that in the event the carrier fails or refuses to comply with the orders and awards of the Board, as above set out, on or before that date, that all employees adversely affected by the failure of the carrier to so act shall be made whole for any and

all money losses, sustained by them as the result of the carrier's failure."

108. On August 2, 1948, Winkel wrote Pickett, saying:

"The conclusions we have reached do not agree with the broad interpretation stated by you in your memorandum of June 26."

Winkel also informed Pickett, in that letter, that some rearrangement of force might be necessary at some stations in order to meet the requirements of the awards, but this would have to be considered in the light of MKT's current requirements, and that Pickett would be advised as to the changes placed in effect.

109. In a letter dated August 3, 1948, Pickett expressed dissatisfaction with Winkel's position and threatened suits to enforce Awards 3932, 3933, and 3934. In that letter, Pickett said:

"I have been unable to secure from you an unequivocal answer to the effect that the Awards would be applied exactly as rendered; neither have I been able to secure from you a statement advising that the Awards were interpretative of the agreement and that the carrier would no longer insist upon executing its previous unilateral interpretations respecting the question of Agents and Telegraphers performing work covered by the Clerical Agreement.

"This letter is, therefore, advice to you that unless we are advised by the carrier on or before August 10, 1948, that it will apply the Awards exactly as directed by the Third Division of the National Railroad Adjustment Board, we will after that date, and in accordance with the Railway Labor Act, institute appropriate action in the courts to enforce the Awards of the Board."

110. Winkel was aware that labor unions have used their economic strength to enforce compliance with awards of the Board.

111. BRC has a strike fund and has resorted to strike ballots to force compliance with awards as interpreted by it.

112. By letter dated August 17, 1948, Winkel informed Pickett that MKT was making the following changes:

(a) At Altus, Oklahoma: Discontinue position of Telegrapher-Cashier under ORT agreement and create position of Cashier under BRC agreement. (Award 3932)

(b) At Chanute, Kansas: Discontinue position of Telegrapher-Cashier under ORT agreement and create position of Cashier under BRC agreement. (Award 3933)

(c) At Lockhart, Texas: Discontinue position of Telegrapher-Cashier under ORT agreement and create position of General Clerk under BRC agreement. (Award 3933)

In the final paragraph of his August 17, 1948 letter, Winkel stated:

"These changes in our opinion fully meet our obligations under these awards, and are not to be construed as a concurrence on our part with your broad interpretation that agents and telegraphers are prohibited from performing clerical work."

Winkel testified that by this paragraph of his letter he meant that he complied with the awards as he interpreted them, subject to current business demands, but that he did not agree with Pickett's interpretation of the awards.

"Subsequent to said letter of August 17, 1948, as shown in Finding 88½, BRC requested an interpretation of Award 3932, MKT asserted the invalidity of that Award in its reply, and BRC admitted that MKT was still insisting that it had the right to assign clerical work to agents and telegraphers the same as before rendition of Award 3932." [Paragraph added Sept. 4, 1954.]

113. In a letter to Winkel, dated August 23, 1948, Pickett expressed dissatisfaction with the changes being made by MKT, and informed Winkel that he

(Pickett) considered the August 17 letter as a refusal by MKT to apply Awards 3932, 3933, and 3934, as rendered. Pickett said in part:

"The awards were very definite in that the carrier was ordered to reassign to clerical positions work then and now being performed by agents and others not covered by the Clerical Agreement. That the carrier has failed and refused to do.

\* \* \* \* \* \*

"The Agent Yardmaster at Altus is now performing exactly the same assignment of clerical work as was performed by him at the time the issue was submitted to the Board. The carrier has done nothing about that situation. The same thing is true at Atoka, Chanute, Junction City, and Lockhart. At the Stamford Station the carrier has done nothing to reconcile the situation there with the awards of the Board.

\* \* \* \* \* \*

"We, therefore, consider your letter of August 17, 1948, as declining to apply the awards as rendered by the Board and our future action in accomplishing that end will be governed by the circumstances and the law obtaining."

114. MKT made the changes described in Finding 112. MKT also created the position of Chief Clerk at Altus, Oklahoma, under BRC's agreement and later consolidated that position with the position of Cashier under BRC's agreement, described in Finding 112(a).

115. MKT transferred clerical work as follows:

(a) At Altus, Oklahoma, from the position of Telegrapher-Cashier under ORT's agreement to the position of Cashier under BRC's agreement;

(b) At Chanute, Kansas, from the position of Telegrapher-Cashier under ORT's agreement to the position of Cashier under BRC's agreement; and

(c) At Lockhart, Texas, from the position of Telegrapher-Cashier under ORT's agreement to the position of General Clerk under BRC's agreement.

116. The changes described in Finding 112; the creation of the position of Chief Clerk at Altus, Oklahoma, described in Finding 114; and the transfers of work described in Finding 115 were the only acts of partial compliance by MKT with Awards 3933 and 3934 and the accompanying Orders, and those changes and transfers were made because of BRC's insistence, demands, and coercive conduct.

117. After the transfer of work described in Finding 115, there was not enough work left to justify continuing the positions of Telegrapher-Cashier at Altus, Oklahoma; Telegrapher-Cashier at Chanute, Kansas; and Telegrapher-Cashier at Lockhart, Texas. Those positions were therefore abolished and the telegraphing work of those positions was assigned to other employees of MKT under ORT's agreement.

118. J. C. Parks, who sought to intervene in November, 1943, in Docket CL–2544, as set forth in Finding 66, held the position of Telegrapher-Cashier at Altus, Oklahoma, at the time that position was abolished.

119. To comply with Award 3932 at Altus, Oklahoma, MKT would be required to transfer to employees who are subject to BRC's agreement the clerical work being performed by the Agent-Yardmaster and the Telegrapher-Clerk who are subject to ORT's agreement.

120. To comply with Award 3933 at Junction City, Kansas, MKT would be required to transfer to an employee who is subject to BRC's agreement the clerical work being performed by the Agent-Telegrapher who is subject to ORT's agreement.

121. To comply with Award 3933 at Chanute, Kansas, MKT would be required to transfer to employees who are subject to BRC's agreement the clerical work being performed by the Agent and Telegrapher-Clerk who are subject to ORT's agreement.

122. To comply with Award 3933 at Lockhart, Texas, MKT would be required to transfer to an employee who is subject to BRC's agreement the clerical work being performed by the Agent-Telegrapher who is subject to ORT's agreement.

123. To comply with Award 3933 at Stamford, Texas, MKT would be required to transfer to employees who are subject to BRC's agreement the clerical work being performed by the Agent, Telegrapher-Cashier, and Telegrapher-Clerk who are subject to ORT's agreement.

124. To comply with Award 3934 at Atoka, Oklahoma, MKT would be required to transfer to employees who are subject to BRC's agreement the clerical work being performed by the Agent and Telegrapher-Clerk who are subject to ORT's agreement.

125. To comply with Awards 3932, 3933, and 3934, as interpreted by BRC, MKT would be required to create 171 clerical positions and to transfer to those positions all clerical work being performed by employees who are subject to ORT's agreement.

126. On July 15, 1948, W. C. Thompson, General Chairman of ORT on MKT, addressed a letter to A. F. Winkel, Assistant General Manager of MKT, concerning Awards 3932, 3933, and 3934. After commenting that it appeared MKT was going ahead with arrangements to put on cashiers under BRC's agreement, at the stations named in those awards, Thompson said:

"I would like to know what you intend to do with the telegraphers on these positions, as we are still contending for the positions as negotiated and do not concede that the National Railroad Adjustment Board can take away positions that we negotiated with the carrier before the Clerks had any such agreement. If the carrier doesn't want to be placed in the position of having two positions at the same place, you had better do something about it, as our Agreement was prior to any agreement with the Clerks and we are not going to give up any positions to the Clerks that we have negotiated with the carrier into our Agreement."

127. On July 27, 1948, Thompson wrote a joint letter to G. E. Leighty, President of ORT, and A. F. Winkel, Assistant General Manager of MKT, about Awards 3932, 3933, and 3934. Attached to that letter was a 15-page "memorandum or brief" which he described as an attack on "the legality of these awards." In the letter, Thompson said, in part:

"I have made an extensive study of these awards and, as I have stated in my memorandum, the awards are full of contradictions as to the facts and violation of the Labor Act. I don't believe that even Mr. Douglas, the referee, or any member of the Board, can successfully argue that Congress intended that the Board should promulgate rules for any organization or carrier, as the law distinctly says they cannot, and that is what Mr. Douglas did for the Clerks. It is also an outstanding fact that Mr. Douglas, the referee, disregarded common law, usage and past practice and binding contract between The Order of Railroad Telegraphers and the Missouri-Kansas-Texas Railroad Company in disposing of the alleged claim of the clerks which was jurisdictional in nature and was a violation of the law and of the rules of procedure of the Board itself.

\*  \*  \*  \*  \*  \*

"I am certain that Mr. Douglas, the referee, or any member of the Board, cannot and will not say that Congress, in enacting the Labor Act, intended to create another dispute through the National Railroad Adjustment Board in disposing of one and that is what Awards 3932, 3933, and 3934 actually accomplish. The referee gets entirely away from the facts when he states that the third party is 'indirectly' affected, when, as a matter of fact, The Order of Railroad Telegraphers, as well as the

carrier, is 'directly' affected, as it takes the work and the positions away from The Order of Railroad Telegraphers and gives them to the Brotherhood of Railway and Steamship Clerks without examining the facts in the case as to the contractural (sic) relations between the ORT and the carrier.

\* \* \* \* \* \*

"The Board overlooks the primary and essential fact that Agents work is at least 95% clerical work depending upon the size of the station, and that clerks are secondary in importance and only used when additional service is to be rendered, and this has not only been the practice since the first railroad ever ran its first train to the present time, but the practice has been put into the form of an agreement between the ORT and the carrier. Award 615 presented the actual facts and conditions that have existed throughout the years of the railroad industry.

\* \* \* \* \* \*

"As further proof of my statement, the Clerks Organization on the MKT property and throughout the United States never claimed that they had any such jurisdiction over clerical work until after the special agreement was negotiated on this Missouri-Pacific in Texas by the Clerks Organization in 1940. Two years after that time, or in 1942, the General Chairman of the Clerks Organization on the MKT Lines presented a similar document to the management of the MKT and several times since that date which was rejected, and which proves conclusively that if the Clerks had in mind that they had negotiated any such rule in 1925, or subsequent thereto, they would have insisted that it be applied to their Organization. It took them 18 years to figure out a dastardly scheme of evading a jurisdictional dispute to find some referee that would reverse Award 615."

In the 15-page memorandum attached to his letter, Thompson said in part:

"I hold that the National Railroad Adjustment Board had no right to assume control and jurisdiction over this dispute without all parties to the dispute being heard.

\* \* \* \* \* \*

"What Referee Douglas did, in Award 3932 and companion Awards (3933 and 3934), was exactly what we predicted, under date of July 9, 1943 and I quote our statement:

" 'The Clerks Organization, after the West Memphis Award 423, seeing an opportunity of extending their jurisdiction and raiding the Telegraphers Organization all over the country, proceeded to instigate claims of the same character that Mr. Pickett has instigated here.'

\* \* \* \* \* \*

"The Board \* \* \* imposed an obligation upon the carrier which is detrimental to the interests of other employes and the public, and creates a condition that might place The Order of Railroad Telegraphers into taking a strike vote to maintain our contractual relations with the carrier, which is chargeable directly to the National Railroad Adjustment Board for its interference instead of performing the functions allocated to the Board under the law.

\* \* \* \* \* \*

"Regardless of the outcome, we are in a position to seek redress against the carrier if there is any action on their part to remove any of the remaining positions named in the above awards from our Schedule Agreement."

128. On August 11, 1948, and again on September 9, 1948, Thompson wrote Winkel protesting the action of MKT in abolishing positions of Telegrapher-Cashier at Lockhart, Texas; Telegrapher-Cashier at Chanute, Kansas; and Telegrapher-Cashier at Altus, Oklahoma. In his letter of August 11, Thompson said in part:

" * * * we respectfully protest against taking the work away from our organization and giving it to the clerks as we have negotiated for these positions since 1918 and the positions belong to us through negotiated agreements."

In his letter of September 9, Thompson said in part:

"We challenge the right of the carrier, or the Adjustment Board, to now make retroactive any condition that existed prior to the enactment of the amended Railway Labor Act of 1934, which would destroy, or take away, any position or work that has been delegated to our craft through due and regular process of contract with the carrier."

"Unless you can reverse your position and cancel your instructions, and restore our men to the positions we have negotiated with you, we will be compelled to refer the matter to the National Railroad Adjustment Board."

129. Winkel informed Thompson by letter dated September 17, 1948, that he could not reverse his position because MKT was "under compulsion of Awards 3932, 3933, and 3934."

130. On January 17, 1949, ORT submitted to the Board in Docket TE–4540, the following claims against MKT:

"(1) That the Carrier violated and continues to violate the terms of the Telegraphers' Agreement when, on August 25, 1948, it declared the position of Telegrapher-Cashier at Lockhart, Texas, abolished and transferred the work of the position to an employe not under the Telegraphers' Agreement.

"(2) That the position of Telegrapher-Cashier shall be restored to the Telegraphers' Agreement and the former incumbent of that position restored thereto and compensated for any loss of wages and expenses incurred by reason of the violative act of the Carrier; and

"(3) That all other employes under the Telegraphers' Agreement improperly displaced from their positions as a result of this violative act of the Carrier shall be restored to their former positions and compensated for any loss of wages and expenses incurred thereby."

131. The documents filed by ORT in Docket TE–4540, including its ex parte submission, showed that BRC and an employee of MKT subject to the collective agreement between MKT and BRC were involved in the dispute and that, in order to comply with an award in favor of ORT, MKT would be required to take clerical work away from an employee subject to BRC's agreement and to assign the same clerical work to an employee subject to ORT's agreement.

132. In its "Statement of Facts" in Docket TE–4540, MKT reminded the Board that it transferred clerical work from the Telegrapher-Cashier to the General Clerk at Lockhart, Texas, in partial compliance with Award 3933.

133. Under the heading "Position of Carrier" in its submission in Docket TE–4540, MKT asserted that BRC had a direct and substantial interest and should be made a party; that such action was required by the decisions of the United States Court of Appeals for the Seventh Circuit in Nord v. Griffin, 86 F.2d 481, and Hunter v. Atchison, T. & S. F. Ry. Co., 171 F.2d 594; and that no legal, binding, and enforceable award and order could be made in Docket TE–4540 unless and until BRC is given due and timely notice and an opportunity to appear and be heard in accordance with due process of law. MKT also requested the Board to give BRC such notice and opportunity to appear and be heard, to the end that a final and complete determination might be made of the rights of the parties.

134. Replying to MKT's argument, ORT said in part:

"If we had been permitted by this Board to intervene in Dockets CL–2752 and companion dockets, Award 2651 and companion awards, and

Docket CL–3715 and companion dockets, Award 3933 and companion awards, we would have shown conclusively that the telegrapher-cashier's position was duly negotiated between this carrier and the employes, represented by The Order of Railroad Telegraphers, October 1, 1916, and has been continuously in effect since that date, and was continued in the present Agreement, dated September 1, 1947 and was negotiated under the Railway Labor Act * * *."

135.   Notice of the hearing in Docket TE–4540 was given to ORT and MKT, but no notice was given to BRC or to its officers, agents, representatives, or members, or to the person holding the position of General Clerk at Lockhart, Texas. ORT and MKT waived oral hearing and submitted the case on written documents.

136.   On February 28, 1950, the Board, with Referee Mortimer Stone sitting as a member thereof, rendered Award 4735 in Docket TE–4540, sustaining all claims of ORT. On the same date, the Board issued an Order directing MKT to make the award effective and to pay, on or before May 1, 1950, all sums of money due under that award.

136½.   Award 4735 was rendered, sustaining the claims of ORT, for the reasons stated in Award 4734, which involved ORT and the Missouri Pacific Lines in Texas and Louisiana. Award 4734 has been held illegal and void by United States District Judge Roy W. Harper in his Memorandum Opinion dated June 16, 1954, in Civil Action No. 8447(3), entitled "The Order of Railroad Telegraphers v. New Orleans, Texas & Mexico Railway Company, et al.", in the United States District Court for the Eastern District of Missouri, Eastern Division, because Award 4734 "was rendered by said Board without giving members of BRS (BRC) notice, and without the members of BRS (BRC) having an opportunity in the hearing to be heard before the National Railroad Adjustment Board." ORT has appealed. [Finding 136½ added Sept. 4, 1954.]

137.   The Board issued Award 4735, and the Order accompanying that Award, without giving BRC and the General Clerk at Lockhart, Texas, an opportunity to be heard in Docket TE–4540.

138.   ORT made written and oral demands upon MKT to comply with Award 4735 and the Order accompanying it but MKT refused.

139.   On April 28, 1950, MKT filed with the Board a motion to set aside Award 4735 and the accompanying Order and to grant a rehearing in Docket TE–4540. In that motion, MKT prayed that the Board give lawful notice of such rehearing to BRC and to the General Clerk at Lockhart, Texas. The Board did not give such notice; and, with Referee Stone sitting as a member, denied MKT's motion on June 9, 1950. Referee Stone reduced to writing his reasons for denying that motion. After referring to Awards 3932, 3933, and 3934, Referee Stone said in part:

"By denying the application to set aside the present Award, No. 4735, we permit that Award to become final and on an equal basis with the Awards to the Clerks and give both Brotherhoods (ORT and BRC) like standing in any consideration of harmonizing or adjusting those Awards * * *."

140.   To comply with Award 4735 and the accompanying Order in Docket TE–4540, MKT would be required to restore the position of Telegrapher-Cashier at Lockhart, Texas, under ORT's agreement, and to reassign to that position the clerical work which, in partial compliance with Award 3933, MKT transferred to the newly created position of General Clerk under BRC's agreement. In that event the position of General Clerk would be abolished and a dispute would be created with BRC.

141.   ORT has threatened to file against MKT claims similar to those in Docket TE–4540, which resulted in Award 4735, if MKT transfers other clerical work from positions under ORT's agreement to positions under BRC's

agreement in compliance with Awards 3932, 3933, and 3934.

142. In March 1949, MKT found it necessary to reduce the number of its employees performing clerical work at Coffeyville, Kansas. Because of BRC Awards 3932, 3933, and 3934, MKT concluded to abolish the position of third-trick Telegrapher-Clerk under ORT's agreement instead of abolishing a clerical position under BRC's agreement. Such action was taken on March 11, 1949 and the bulk of the clerical work previously performed by the third-trick Telegrapher-Clerk was then assigned to a night clerk of MKT who is subject to BRC's agreement.

143. Practically all the telegraphing work which had been performed by the third-trick Telegrapher-Clerk at Coffeyville, Kansas, before that position was abolished, as described in Finding 142, was transferred to two remaining positions of Telegrapher-Clerk at Coffeyville. The only telegraphing work transferred from this abolished position to telegraph operators at Coffeyville Tower was work thereafter performed in about 30 minutes of an 8-hour assignment. The telegraph operators at Coffeyville Tower had performed telegraphing work for MKT for many years before this additional work was assigned to them. Under an operating agreement between MKT and the Missouri Pacific Railroad Company, the telegraph operators at Coffeyville Tower perform joint service for those companies. They are carried on the payroll of the Missouri Pacific and MKT reimburses Missouri Pacific for its proportion of their salaries. Prior to the filing of its submission in Docket TE–4953, ORT had not complained about the telegraph operators at Coffeyville Tower performing telegraphing service for MKT. ORT has never complained of the performance of telegraphing service for MKT by telegraph operators of other companies who perform joint service for MKT and such other companies under joint operating agreements at other points on MKT lines.

144. ORT complained to MKT about the transfer of clerical work at Coffey-ville, Kansas, described in Finding 142, but ORT made no complaint to MKT about the transfer of telegraphing work, described in Finding 143. Under the rules of the Board, a claim cannot be considered by the Board unless it has first been presented to and declined by the railroad.

145. In December, 1949, ORT submitted to the Board, in Docket TE–4953, the following claim against MKT:

"(1) That the Carrier violated the terms of the Telegraphers' Agreement when, on March 11, 1949, it discontinued the third trick telegrapher-clerk position at Coffeyville, Kansas, regularly assigned to W. Atwill, and transferred the work of the position to an employee not under the Telegraphers' Agreement; and

"(2) That the position of third trick telegrapher-clerk, the duties of which were not in fact abolished, shall be restored and W. Atwill, the regularly assigned incumbent thereof, shall be restored to his former position, and all employees who were displaced as a result of this improper act of the Carrier shall be returned to their former positions and be reimbursed for all wage loss suffered retroactive to the date improperly displaced."

146. ORT's ex parte submission in TE–4953, and other documents filed by ORT in that docket, showed that BRC and an employee of MKT subject to the collective agreement between MKT and BRC were involved in the dispute and that, in order to comply with an award in favor of ORT, MKT would be required to take clerical work away from an employee subject to BRC's agreement and to assign the same clerical work to an employee subject to ORT's agreement.

147. Referee Jay S. Parker sat with the Board in Docket TE–4953. In hearings before a referee, one labor member of the Board represents the claimant and the labor members of the Board; and one carrier member of the Board represents the carrier and the carrier

members of the Board. In this dispute, A. R. Ferris was the labor representative and J. E. Kemp was the carrier representative. In such representative capacity, J. E. Kemp submitted a written statement to Referee Parker in which he said:

"The issue in this dispute is— when it becomes necessary to abolish one of two positions, which one of the two should be abolished—a position under the Telegraphers' Agreement or a position under the Clerks' Agreement?

\*    \*    \*    \*    \*    \*

"The following is to be considered as supplementing the Carrier's presentation.

"Employes cite numerous Board awards \* \* \* in support of their position. However, none of these appear applicable in this dispute which involves the jurisdictional dispute between the Telegraphers' Organization and the Clerks' Organization with respect the performance of clerical work by Telegraphers."

In the same written statement, Kemp quoted from awards of the Board, including Award 615, which dealt at length with jurisdictional disputes between ORT and BRC relating to the performance of station clerical work.

147½. The opinion of the Board in Award 5014 contains the following statements:

"The Carrier (MKT) denies the first portion of the Employes' assertion but we note that in one of its submissions in Award 3932 it states that for 48 years on its railroad this character of work (clerical) had been performed under the Telegraphers' Agreement. \* \* \*

"In any event it appears from admissions made by the Carrier of record that when it discontinued the position it assigned all of its then existing clerical duties to an employe covered by the Clerks' Agreement \* \* \*." [Finding 147½ added Sept. 4, 1954.]

148. The Board gave no notice of the filing of ORT's claim in Docket TE–4953 and gave no notice of any proceedings in that docket to BRC or to its officers, agents, representatives or members, or to the employee of MKT holding the night clerical position at Coffeyville, Kansas.

149. ORT and MKT waived oral hearing in Docket TE–4953 and the Board, with Referee Parker, sitting as a member, on August 10, 1950, issued Award 5014 sustaining ORT's claim and on the same date entered an Order directing MKT to make the award effective.

150. In support of Award 5014, the Board cited several awards, including Award 4735, the enforcement of which this Court temporarily enjoined on April 10, 1952, and the enforcement of which MKT now asks the Court to enjoin permanently.

151. The Board issued Award 5014, and the Order accompanying that award, without giving BRC and the employee of MKT holding the night clerical position at Coffeyville, Kansas, an opportunity to be heard in Docket TE–4953.

152. MKT has not complied with Award 5014 and the accompanying Order; to do so, MKT would be required to take clerical work away from an employee under BRC's agreement and to assign the same clerical work to a Telegrapher-Clerk under ORT's agreement. In that event, a dispute would be created with BRC.

153. The employee of MKT holding the position of General Clerk at Lockhart, Texas, and the employee of MKT holding the night clerical position at Coffeyville, Kansas, are members of the craft or class represented by BRC and are subject to the collective agreement between MKT and BRC.

154. The employees of MKT who held the positions of Telegrapher-Cashier at Altus, Oklahoma; Telegrapher-Cashier at Chanute, Kansas; and Telegrapher-Cashier at Lockhart, Texas, when those positions were abolished by MKT in partial compliance with Awards 3932 and

3933 and the Orders accompanying those awards, were members of the craft or class represented by ORT and were subject to the collective agreement between MKT and ORT.

155. The employees of MKT holding the positions of Agent-Yardmaster, and Telegrapher-Clerk at Altus, Oklahoma; Agent, and Telegrapher-Clerk at Chanute, Kansas; Agent-Telegrapher at Junction City, Kansas; Agent-Telegrapher at Lockhart, Texas; Agent, Telegrapher-Cashier, and Telegrapher-Clerk at Stamford, Texas; Agent, and Telegrapher-Clerk at Atoka, Oklahoma, are members of the class or craft represented by ORT and are subject to the collective agreement between MKT and ORT.

156. In disputes such as those involved in Awards 3932, 3933, 3934, 4735, and 5014, it is the settled custom and practice of the Board:

(a) Not to give notice of the filing of a claim to anyone except the claimant and the railroad named in the claim.

(b) Not to permit anyone, except the claimant and the railroad named in the claim, to file papers or other documents with the Board.

(c) Not to give notice of hearing to anyone except the claimant and the railroad named in the claim.

(d) Not to permit anyone, except those to whom the Board has given notice, to be present at the hearing or to participate in the hearing.

(e) Not to permit anyone to intervene.

(f) Not to recognize anyone as a party to a proceeding except the claimant and the railroad named in the claim, and not to make anyone else a party to a proceeding, even when requested to do so.

157. The settled custom and practice of the Board, described in Finding 156, is caused by the position of the labor members of the Board that only the claimant and the railroad named by the claimant should be given notice and an opportunity to be heard.

158. The position of the labor members of the Board, described in Finding 157, is the result of a policy fixed by agreement between the chief executives of the railroad labor organizations who comprise the Railway Labor Executives Association and who select, control and discipline the labor members of the Board.

159. The carrier members of the Board are opposed to its settled custom and practice described in Finding 156. It is their position that the Board should give notice and an opportunity to be heard to all employees and labor organizations involved in disputes submitted to the Board.

160. The conflicting positions of the labor members and of the carrier members of the Board make it impossible for the Board to decide the issue as to notice and hearing without the aid of referees.

161. Referees appointed to break deadlocks as to notice and hearing are divided in their opinions. Some agree with the position of the labor members of the Board and render awards on the merits without giving notice and opportunity to be heard; others agree with the position of the carrier members of the Board but render awards dismissing the claims, without prejudice, instead of ordering that notice and hearing be given.

162. These divergent views and actions of the Board members and the referees, described in Findings 158 to 161, have produced an administrative deadlock, stalemate and frustration on the Board. The carrier members have asked for judicial guidance.

163. Awards 3932, 3933, 3934, and 4735, and the accompanying Orders, and the conflicting demands made by BRC and ORT upon MKT that it comply with those awards and orders, have created a state of unrest among the employees of MKT who are represented by BRC and ORT, and those awards and orders have disrupted the peaceful relations between MKT and those employees.

164. To comply with Awards 3932, 3933, 3934, and 4735, and 5014, MKT would be required to expend yearly the following sums of money:

(a) Under BRC's interpretation of Awards 3932, 3933, and 3934,— $547,200.

(b) Under Award 3932, as rendered—$7,680.

(c) Under Award 3933, as rendered—$7,680.

(d) Under Award 3934, as rendered—$7,680.

(e) Under Award 4735, as rendered—$3,850.

(f) Under Award 5014, as rendered—$4,345. [As amended Sept. 4, 1954.]

165. MKT is confronted with the following multiplicity of actions as a result of Awards 3933, 3934, 4735, and 5014, and the Orders accompanying those awards:

(a) To enforce Award 3933 and the accompanying Order:

Civil Action No. 7179(3), entitled "System Committee of the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes, A. J. Pickett, General Chairman, v. Missouri-Kansas-Texas Railroad Company and Missouri-Kansas-Texas Railroad Company of Texas", pending in the District Court of the United States for the Eastern District of Missouri, Eastern Division.

(b) To enforce Award 3934 and the accompanying Order:

Civil Action No. 7227(3), entitled "System Committee of the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes, A. J. Pickett, General Chairman, v. Missouri-Kansas-Texas Railroad Company and Missouri-Kansas-Texas Railroad Company of Texas", pending in the District Court of the United States for the Eastern District of Missouri, Eastern Division.

(c) To enforce Award 4735 and the accompanying Order:

Civil Action No. 4572, entitled "The Order of Railroad Telegraphers v. Missouri-Kansas-Texas Railroad Company of Texas", pending in the District Court of the United States for the Northern District of Texas, Dallas Division.

(d) To enforce Award 5014 and the accompanying Order:

Civil Action No. 8708(2), entitled "The Order of Railroad Telegraphers v. Missouri-Kansas-Texas Railroad Company", in the District Court of the United States for the Eastern District of Missouri, Eastern Division.

By Order entered June 18, 1952, Civil Action No. 4572 was dismissed without prejudice to its being reinstated upon application made by The Order of Railroad Telegraphers within 60 days after it ceases to be enjoined from prosecuting a suit to enforce Award 4735.

In Civil Action No. 8708(2), the District Court entered Orders denying MKT's motion to stay proceedings, motion for a continuance, and motion to dismiss for failure of ORT to state a claim upon which relief can be granted and for failure of ORT to make BRC a party to the court action. MKT cannot appeal from said Orders until after a trial of the case on the merits and in which BRC would not participate. No other action in the case, except setting it for a pre-trial conference in May 1953, has been taken by the District Court.

No action has ben taken by the District Court in Civil Actions Nos. 7179(3) and 7227(3) except to pass or continue those cases pending final judgment in Civil Action 50 C 684. [Last two paragraphs added Sept. 4, 1954.]

166. No suit has been filed to enforce Award 3932.

167. The System Committee of the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes, named as plaintiff in

Civil Actions Nos. 7179(3) and 7227(3), described in Finding 165, is a subordinate unit of the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes.

168. Neither the Board nor its members are parties to the suits filed against MKT, described in Finding 165, and they cannot be made parties because the headquarters of the Board is in the City of Chicago, Cook County, Illinois, and the members of the Board reside in the State of Illinois, within the jurisdiction of this Court.

169. In this action, a judgment could be rendered directing and requiring the Board and its members,—

(a) To consolidate the proceedings in Dockets CL-3714, CL-3715, CL-3716, TE-4540, and TE-4953 for a single hearing.

(b) To give all parties, persons, employees and labor organizations involved in said disputes notice of such hearing and an opportunity to be heard.

(c) To consider in such consolidated proceeding the agreement between MKT and BRC, the agreement between MKT and ORT, and the custom and practice under those agreements.

No such relief could be granted in suits filed against MKT, described in Finding 165.

170. The question for the Board's decision, in Dockets CL-3714, CL-3715, CL-3716, TE-4540, and TE-4953 (Awards 3932, 3933, 3934, 4735 and 5014) is whether the employees of MKT who are subject to BRC's agreement, or the employees of MKT who are subject to ORT's agreement have the right to perform station clerical work. A decision in any of the suits filed against MKT, described in Finding 165 might hamper and prevent the Board from reaching an initial and independent decision on this question.

171. In Civil Action No. 7179(3) and Civil Action No. 7227(3) pending in St. Louis, Missouri, described in Finding 165, the Court would be required to decide whether the collective agreement between MKT and BRC, or the custom and practice under that agreement, entitles employees of MKT who are subject to that agreement, to perform station clerical work. That question should be decided by the Board. A decision in Civil Action No. 7179(3) or a decision in Civil Action No. 7227(3) might hamper and prevent the Board from reaching an initial and independent decision on this question.

172. In Civil Action No. 4572 pending in Dallas, Texas, and in Civil Action No. 8708(2) pending in St. Louis, Missouri, described in Finding 165, the Court would be required to decide whether the collective agreement between MKT and ORT, or the custom and practice under that agreement, entitles employees of MKT who are subject to that agreement, to perform station clerical work. That question should be decided by the Board. A decision in Civil Action No. 4572 or a decision in Civil Action No. 8708(2) might hamper and prevent the Board from reaching an initial and independent decision on this question

173. Both plaintiffs, Missouri-Kansas-Texas Railroad Company and Missouri-Kansas-Texas Railroad Company of Texas, are parties to the collective agreement with ORT.

Missouri-Kansas-Texas Railroad Company is not a party to Civil Action No. 4572, described in Finding 165, pending in Dallas, Texas.

Missouri-Kansas-Texas Railroad Company of Texas is not a party to Civil Action No. 8708(2), described in Finding 165, pending in St. Louis, Missouri.

In Civil Action No. 4572, the Court would be required to construe and apply the collective agreement between ORT and MKT. A judgment in that case would not be binding upon Missouri-Kansas-Texas Railroad Company.

In Civil Action No. 8708(2), the Court would be required to construe and apply the collective agreement between ORT and MKT. A judgment in that case

would not be binding upon Missouri-Kansas-Texas Railroad Company of Texas.

A judgment for ORT in Civil Action No. 4572 would impair, impede and hamper the orderly application of the collective agreement between ORT and Missouri-Kansas-Texas Railroad Company, and would be productive of more disputes between ORT and that Company.

A judgment for ORT in Civil Action No. 8708(2) would impair, impede and hamper the orderly application of the collective agreement between ORT and Missouri-Kansas-Texas Railroad Company of Texas, and would be productive of more disputes between ORT and that Company.

174. The possibility of a conflict between the decision in Civil Action No. 4572 pending in Dallas, Texas, within the jurisdiction of the United States Court of Appeals for the Fifth Circuit, and the decision in Civil Action No. 8708(2) pending in St. Louis, Missouri, within the jurisdiction of the United States Court of Appeals for the Eighth Circuit would be avoided by permitting the Board, in a lawful proceeding, to interpret and apply the collective agreement between plaintiffs and ORT.

175. No labor member of the Board would join the carrier members of the Board in voting to reopen and consolidate Dockets CL–3714, CL–3715, CL–3716, TE–4540, and TE–4953, to hear the disputes in those dockets in one proceeding, and to give notice of such hearing and an opportunity to be heard to ORT, BRC, and the persons holding the positions which would be affected by an award of the Board.

176. The settled custom and practice of the Board, the conflicting positions of its members, and the divergent views and actions of its members and referees, set forth in Findings 156 to 162, defeat the declared purpose of the Railway Labor Act "to provide for the prompt and orderly settlement of all disputes."

177. MKT has no adequate remedy at law.

178. MKT will suffer irreparable injury, loss, and damage unless the injunctive relief sought by MKT is granted.

Conclusions of Law

Upon the foregoing Findings of Fact, I conclude:

1. This action arises under the Constitution and laws of the United States, and the matter in controversy exceeds the sum or value of $3,000 exclusive of interest and costs, 28 U.S.C.A. § 1331. It also arises under an Act of Congress regulating commerce, 28 U.S.C.A. § 1337.

2. The Court has jurisdiction of the parties and of the subject matter of this action, and venue is properly in this Court.

3. The complaint, as amended, states a cause of action upon which relief can be granted to MKT.

4. BRC and ORT are unincorporated associations and are properly sued in this action in their common names.

5. The subject matter of this action is a proper subject of a class action.

6. The members of BRC constitute a class; they have a common interest in the facts and law of this case; and they are so numerous as to make it impracticable to bring them all before the Court.

7. The members of ORT constitute a class; they have a common interest in the facts and law of this case; and they are so numerous as to make is impracticable to bring them all before the Court.

8. G. B. Goble is a member of BRC and will fairly insure the adequate representation in this cause of all members of BRC constituting a class.

9. H. C. Kearby, R. B. Boyington, and J. W. Whitehouse are members of ORT and will fairly insure the adequate representation in this cause of all members of ORT constituting a class.

10. BRC and ORT will fairly insure the adequate representation in this cause of all members of the BRC and ORT classes.

11. G. B. Goble is such a person as could reasonably be expected to give

notice of this action to BRC and to its Grand Lodge, Subordinate Units, System Boards of Adjustment, Terminal Boards of Adjustment, and Lodges.

12. H. C. Kearby, R. B. Boyington, and J. W. Whitehouse, are such persons as could reasonably be expected to give notice of this action to ORT, and to its Grand Division, Subordinate Divisions, System Divisions, Local Divisions, and Local Boards of Adjustment.

13. BRC was the claimant before the Board in Dockets CL–3714, CL–3715, and CL–3716, in which dockets Awards 3932, 3933, and 3934 were rendered.

14. The System Committee of the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes, is a subordinate unit of BRC and is not a proper, necessary, or indispensable party to this action.

15. ORT was the claimant before the Board in Dockets TE–4540 and TE–4953, in which dockets Awards 4735 and 5014 were rendered.

16. James M. Douglas, Mortimer Stone, and Jay S. Parker, the Referees in Awards 3932, 3933, 3934, 4735, and 5014, are not proper, necessary, or indispensable parties to this action.

■ 17. This case does not involve a labor dispute within the meaning of the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq., and this Court has not been deprived by that Act of jurisdiction to invalidate the awards and orders involved in this case.

■ 18. Section 3, First (p) of the Railway Labor Act, providing for judicial enforcement of awards of the Board, does not limit the previously existing jurisdiction of this Court.

19. ORT and the employees of MKT holding the positions of Agent-Yardmaster, Telegrapher-Cashier, and Telegrapher-Clerk at Altus, Oklahoma, were involved in the dispute submitted to the Board by BRC in Docket CL–3714, which resulted in Award 3932.

20. ORT and the employees of MKT holding the positions of Agent and Telegrapher-Cashier at Chanute, Kansas; Agent-Telegrapher at Junction City, Kansas; Agent-Telegrapher, and Telegrapher-Cashier at Lockhart, Texas; Agent, Telegrapher-Cashier, and Telegrapher-Clerk at Stamford, Texas, were involved in the dispute submitted to the Board by BRC in Docket CL–3715, which resulted in Award 3933.

21. ORT and the employees of MKT holding the positions of Agent, and Telegrapher-Clerk at Atoka, Oklahoma, were involved in the dispute submitted to the Board in Docket CL–3716, which resulted in Award 3934.

22. BRC and the employee of MKT holding the position of General Clerk at Lockhart, Texas, were involved in the dispute submitted to the Board in Docket TE–4540, which resulted in Award 4735.

23. BRC and the employee of MKT holding the night clerical position at Coffeyville, Kansas, were involved in the dispute submitted to the Board by ORT in Docket TE–4953, which resulted in Award 5014.

■ 24. It was the duty of the Board in Docket CL–3714 to give ORT and the employees of MKT holding the positions of Agent-Yardmaster, Telegrapher-Cashier, and Telegrapher-Clerk, at Altus, Oklahoma, notice of the filing by BRC of the claim in Docket CL–3714; to permit ORT and each of those employees to file papers and other documents; to give ORT and each of those employees notice of the hearing; and to give ORT and each of those employees an opportunity to be heard.

25. It was the duty of the Board in Docket CL–3715 to give ORT and the employees of MKT holding the positions of Agent, and Telegrapher-Cashier at Chanute, Kansas; Agent-Telegrapher at Junction City, Kansas; Agent-Telegrapher, and Telegrapher-Cashier at Lockhart, Texas; Agent, Telegrapher-Cashier, and Telegrapher-Clerk at Stamford, Texas, notice of the filing by BRC of the claim in Docket CL–3715; to permit ORT and each of those employees to file

papers and other documents; to give ORT and each of those employees notice of the hearing; and to give ORT and each of those employees an opportunity to be heard.

26. It was the duty of the Board in Docket CL–3716 to give ORT and the employees of MKT holding the positions of Agent, and Telegrapher-Clerk at Atoka, Oklahoma, notice of the filing by BRC of the claim in Docket CL–3716; to permit ORT and each of those employees to file papers and other documents; to give ORT and each of those employees notice of the hearing; and to give ORT and each of those employees an opportunity to be heard.

27. It was the duty of the Board in Docket TE–4540 to give BRC and the employee of MKT holding the position of General Clerk at Lockhart, Texas, notice of the filing by ORT of the claim in Docket TE–4540; to permit BRC and that employee to file papers and other documents; to give BRC and that employee notice of a hearing; and to give BRC and that employee an opportunity to be heard.

28. It was the duty of the Board in Docket TE–4953 to give BRC and the employee of MKT holding the night clerical position at Coffeyville, Kansas, notice of the filing by ORT of the claim in Docket TE–4953; to permit BRC and that employee to file papers and other documents; to give BRC and that employee notice of a hearing; and to give BRC and that employee an opportunity to be heard.

■ 29. It was the duty of the Board to consolidate Dockets CL–3714, CL–3715, CL–3716, TE–4540, and TE–4953, and to hear all contentions as one dispute.

■ 30. It was the duty of the Board in Dockets CL–3714, CL–3715, CL–3716, TE–4540, and TE–4953 to consider the collective agreement between BRC and MKT, and the collective agreement between ORT and MKT, in light of each other, and usage, practice, and custom thereunder.

31. BRC's ex parte submission in Docket CL–3714 and other documents filed by BRC in that docket were sufficient to put the Board on notice that ORT and employees of MKT subject to the collective agreement between MKT and ORT were involved in the dispute in Docket CL–3714 and that, in order to comply with an award in favor of BRC, MKT would be required to take clerical work away from employees subject to ORT's agreement and to assign the same clerical work to employees subject to BRC's agreement.

32. BRC's ex parte submission in Docket CL–3715, and other documents filed by BRC in that docket, were sufficient to put the Board on notice that ORT and employees of MKT subject to the collective agreement between MKT and ORT were involved in the dispute in Docket CL–3715 and that, in order to comply with an award in favor of BRC, MKT would be required to take clerical work away from employees subject to ORT's agreement and to assign the same clerical work to employees subject to BRC's agreement.

33. BRC's ex parte submission in Docket CL–3716, and other documents filed by BRC in that docket, were sufficient to put the Board on notice that ORT and employees of MKT subject to the collective agreement between MKT and ORT were involved in the dispute in Docket CL–3716 and that, in order to comply with an award in favor of BRC, MKT would be required to take clerical work away from employees subject to ORT's agreement and to assign the same clerical work to employees subject to BRC's agreement.

34. The documents filed by ORT in Docket TE–4540, including its ex parte submission, were sufficient to put the Board on notice that an employee of MKT subject to the collective agreement between MKT and BRC were involved in the dispute in Docket TE–4540 and that, in order to comply with an award in favor of ORT, MKT would be required to take clerical work away from an em-

ployee subject to BRC's agreement and to assign the same clerical work to an employee subject to ORT's agreement.

35. ORT's ex parte submission in Docket TE–4953 and other documents filed by ORT in that docket, and the written statement furnished to Referee Jay S. Parker by J. E. Kemp, a carrier member of the Board, were sufficient to put the Board on notice that BRC and an employee of MKT subject to the collective agreement between MKT and BRC were involved in the dispute in Docket TE–4953 and that, in order to comply with an award in favor of ORT, MKT would be required to take clerical work away from an employee subject to BRC's agreement and to assign the same clerical work to an employee subject to ORT's agreement. The opinion of the Board in Award 5014 shows that the Board, including Referee Parker, was aware of these facts. [Last sentence added Sept. 4, 1954.]

36. The Board did not perform the duties set forth in Conclusions of Law 24 to 28.

37. Awards 3932, 3933, 3934, 4735, and 5014, and the Orders accompanying those awards, are null and void.

38. By voiding Awards 3932, 3933, 3934, 4735, and 5014, and the accompanying Orders, the Court leaves Dockets CL–3714, CL–3715, CL–3716, TE–4540, and TE–4953, and all employees and labor organizations involved in the disputes submitted to the Board in those dockets, in the same position they occupied before the awards and orders were rendered.

39. In failing to perform the duties set forth in Conclusions of Law 24 to 28, the Board denied MKT the due process of law to which MKT was, and is, entitled under the Fifth Amendment to the Constitution of the United States.

40. In issuing Awards 3932, 3933, 3934, 4735, and 5014, and the Orders accompanying those awards, without first having performed the duties set forth in Conclusions of Law 24 to 28, the Board denied MKT the due process of law to which it was entitled under the Fifth Amendment to the Constitution of the United States.

41. To require MKT to comply with Awards 3932, 3933, 3934, 4735, and 5014, and the Orders accompanying those awards, or to comply with any of those awards and orders, would deprive MKT of its property rights without due process of law, contrary to and in violation of the Fifth Amendment to the Constitution of the United States.

42. The Board is required to perform the duties described in Conclusions of Law 24 to 28, whether or not its rules of procedure provide for the performance of those duties.

43. The Board has no power to issue an award and order until it has performed its duty to give notice and opportunity to be heard to all employees and labor organizations involved in a dispute.

44. Actual knowledge by anyone of the pendency of a proceeding before the Board, or of a hearing to be held in such proceeding, does not excuse the Board from performing its duty as to notice and hearing.

45. MKT cannot be deprived of the right to have the Board perform its duty as to notice and hearing because employees or labor organizations involved in the dispute may actually know that a proceeding is pending before the Board or may know when a hearing will be held.

46. MKT was, and is, entitled to have the Board perform the duties set forth in Conclusions of Law 24 to 28.

47. MKT has the right to attack the validity of Awards 3932, 3933, 3934, 4735, and 5014, and the accompanying orders, on the ground that the Board did not give notice and an opportunity to be heard to employees or labor organizations involved in the disputes.

48. MKT's partial compliance with void Awards 3932 and 3933, and the accompanying Orders was induced by BRC's insistence, demands, and coercive conduct; and MKT's partial compliance

which implemented those void awards and orders was void and of no legal effect.

49. MKT has no adequate remedy at law.

50. MKT will suffer irreparable injury, loss, and damage unless the injunctive relief sought by MKT is granted.

51. BRC and its Subordinate Units, System Boards of Adjustment, System Committees, District Boards of Adjustent, Terminal Boards of Adjustment, Lodges, members, officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, should be enjoined and restrained from prosecuting Civil Action No. 7179(3) and Civil Action No. 7227 (3), described in Finding 165, and from attempting or threatening to enforce compliance with Awards 3932, 3933, or 3934, and the Orders accompanying those awards.

52. ORT and its Subordinate Divisions, System Divisions, Local Divisions, Local Boards of Adjustment, members, officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, should be enjoined and restrained from prosecuting Civil Action No. 4572 and Civil Action No. 8708(2), described in Finding 165, and from attempting or threatening to enforce compliance with Awards 4735 and 5014, and the Orders accompanying those awards.

53. The relief sought by MKT is in the nature of mandamus but it can be granted under the general equity powers of the court.

54. A mandatory injunction should be issued commanding the Board and its members,—

(a) To reopen Dockets CL–3714, CL–3715, CL–3716, TE–4540, and TE–4953;

(b) To consolidate Dockets CL–3714, CL–3715, CL–3716, TE–4540, and TE–4953, for a single hearing, and to hold such hearing;

(c) To give notice of such consolidation and of such hearing to Missouri-Kansas-Texas Railroad Company and Missouri-Kansas-Texas Railroad Company of Texas; to the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes; to The Order of Railroad Telegraphers; to the employees of Missouri-Kansas-Texas Railroad Company who held the positions of Telegrapher-Cashier at Altus, Oklahoma, and Telegrapher-Cashier at Chanute, Kansas, when those positions were abolished pursuant to Awards 3932 and 3933, and the Orders accompanying those awards; to the employee of Missouri-Kansas-Texas Railroad Company of Texas who held the position of Telegrapher-Cashier at Lockhart, Texas, when that position was abolished pursuant to Award 3933 and the Order accompanying that award; to the employees of Missouri-Kansas-Texas Railroad Company holding the following positions: Agent-Yardmaster, and Telegrapher-Clerk at Altus, Oklahoma; Agent and Telegrapher-Clerk at Atoka, Oklahoma; Agent, and Telegrapher-Clerk at Chanute, Kansas; Agent-Telegrapher at Junction City, Kansas; night clerk at Coffeyville, Kansas; to the employees of Missouri-Kansas-Texas Railroad Company of Texas holding the following positions: Agent-Telegrapher, and General Clerk, at Lockhart, Texas; and Agent, Telegrapher-Cashier, and Telegrapher-Clerk at Stamford, Texas;

(d) To permit plaintiffs, the labor organizations, and the employees specified in paragraph (c) of this conclusion of law to file papers and other documents in consolidated Dockets CL–3714, CL–3715, CL–3716, TE–4540, and TE–4953;

(e) To give plaintiffs, the labor organizations, and the employees specified in paragraph (c) of this conclusion of law an opportunity to

be heard in the consolidated hearing; and

(f) To consider the agreement between plaintiffs and the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes, the agreement between plaintiffs and The Order of Railroad Telegraphers, and the custom and practice under those agreements, in making an award and order in consolidated Dockets CL–3714, CL–3715, CL–3716, TE–4540, and TE–4953.

### Final Decree

This cause came on to be heard on December 14, 1953;

And came plaintiffs Missouri-Kansas-Texas Railroad Company and Missouri-Kansas-Texas Railroad Company of Texas by their attorneys;

And came defendants G. B. Goble and the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes by their attorneys;

And came defendants H. C. Kearby, J. W. Whitehouse, R. B. Boyington, and The Order of Railroad Telegraphers by their attorneys;

And came defendants C. P. Dugan, J. E. Kemp, R. M. Butler, W. H. Castle, and E. T. Horsley, carrier members of the National Railroad Adjustment Board, Third Division, by their attorneys;

And came not defendant National Railroad Adjustment Board, Third Division, though duly cited to appear;

And came not defendants J. H. Sylvester, Gerald Orndorff, Roger Sarchet, C. R. Barnes, and J. W. Whitehouse, labor members of the National Railroad Adjustment Board, Third Division, though duly cited to appear;

And came not the United States of America, though duly served as required by law;

And the Court having heard the evidence, considered the briefs, and heard the oral arguments of counsel for the appearing parties;

And it appearing to the Court that the National Railroad Adjustment Board, Third Division, issued Awards 3932, 3933, 3934, 4735, and 5014, and the Orders accompanying those awards, in the Board's Dockets CL–3714, CL–3715, CL–3716, TE–4540, and TE–4953, respectively, without complying with its duty to give due notice and an opportunity to be heard to labor organizations and employees of plaintiffs involved in the disputes in those dockets;

And it appearing to the Court that Awards 3932, 3933, 3934, 4735, and 5014, and the Orders accompanying those awards, are null and void;

And it appearing to the Court that the National Railroad Adjustment Board, Third Division, in issuing said awards and orders, denied to plaintiffs the due process of law to which they were entitled under the Fifth Amendment to the Constitution of the United States;

And it appearing to the Court that plaintiffs, if required to comply with said awards and orders, or any of them, will be deprived of their property without due process of law, in violation of the Fifth Amendment to the Constitution of the United States;

And it appearing to the Court that defendant Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes is insisting and demanding that plaintiffs comply with Awards 3932, 3933, and 3934, and the Orders accompanying those awards, and is threatening to take punitive action against plaintiffs if they do not comply with such demands;

And it appearing to the Court that defendant The Order of Railroad Telegraphers is insisting and demanding that plaintiffs comply with Awards 4735 and 5014, and the Orders accompanying those awards, and is threatening to take punitive action against plaintiffs if they do not comply with such demands;

And it appearing to the Court that Awards 3933 and 4735, and the Orders accompanying those awards, are conflicting and impossible of compliance because

they order plaintiffs to give the same work at the same time to two different employees at Lockhart, Texas;

And it appearing to the Court that defendant Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes, acting by and through its System Committee and A. J. Pickett, General Chairman of that Committee, has brought two suits against plaintiffs, Civil Actions Nos. 7179(3) and 7227(3), in the District Court of the United States for the Eastern District of Missouri, Eastern Division, to enforce Awards 3933 and 3934, respectively, and the Orders accompanying those awards;

And it appearing to the Court that defendant The Order of Railroad Telegraphers has brought suit against plaintiff Missouri-Kansas-Texas Railroad Company of Texas, Civil Action No. 4572, in the District Court of the United States for the Northern District of Texas, Dallas Division, to enforce Award 4735 and the Order accompanying that award;

And it appearing to the Court that defendant The Order of Railroad Telegraphers has brought suit against plaintiff Missouri-Kansas-Texas Railroad Company, Civil Action No. 8708(2), in the District Court of the United States for the Eastern District of Missouri, Eastern Division, to enforce Award 5014 and the Order accompanying that award;

And it appearing to the Court that plaintiffs are confronted with a multiplicity of actions to enforce awards and orders which are null and void;

And it appearing to the Court that defendant Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes has not sued plaintiffs to enforce Award 3932, and the Order accompanying that award, but is threatening to take other action against plaintiffs to compel them to comply with said void award and order;

And it appearing to the Court that neither the National Railroad Adjustment Board, Third Division, nor the members of that Board are parties to said Civil Actions Nos. 7179(3), 7227 (3), 4572, and 8708(2), and that the Board and its members cannot be made parties to those actions because the headquarters of the Board is in the City of Chicago, Cook County, Illinois, and the members of the Board reside in the State of Illinois, within the jurisdiction of this Court;

And it appearing to the Court that the question in Awards 3932, 3933, 3934, 4735, and 5014, which the Board should decide in a lawful proceeding, is whether employees of plaintiffs who are subject to an agreement between plaintiffs and the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes, or employees of plaintiffs who are subject to an agreement between plaintiffs and The Order of Railroad Telegraphers, have the right to perform station clerical work, and that a decision in any of said actions against plaintiffs might hamper and prevent the Board from reaching an initial and independent decision on this question;

And it appearing to the Court that judgments cannot be rendered in Civil Actions Nos. 7179(3) and 7227(3) until the Court in those actions has determined whether the agreement between plaintiffs and defendant Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes, or the custom and practice under that agreement, entitles employees of plaintiffs who are subject to that agreement to perform station clerical work; that such question should be decided by the Board in a lawful proceeding; and that a decision on this question in either of those actions might hamper and prevent the Board from reaching an initial and independent decision on this question;

And it appearing to the Court that judgments cannot be rendered in Civil Actions Nos. 4572 and 8708(2) until the Court in those actions has determined whether the agreement between plaintiffs and defendant The Order of Railroad Telegraphers, or the custom and

practice under that agreement, entitles employees of plaintiffs who are subject to that agreement to perform station clerical work; that such question should be decided by the Board in a lawful proceeding; and that a decision on this question in either of those actions might hamper and prevent the Board from reaching an initial and independent decision on this question;

And it appearing to the Court that both plaintiffs are parties to an agreement with defendant The Order of Railroad Telegraphers; that plaintiff Missouri-Kansas-Texas Railroad Company is not a party to Civil Action No. 4572 and would not be bound by a judgment in that action; that plaintiff Missouri-Kansas-Texas Railroad Company of Texas is not a party to Civil Action No. 8708(2) and would not be bound by a judgment in that action; that a judgment for The Order of Railroad Telegraphers in Civil Action No. 4572 would impair, impede, and hamper the orderly application of said agreement by plaintiff Missouri-Kansas-Texas Railroad Company and would be productive of more disputes between that plaintiff and defendant The Order of Railroad Telegraphers; that a judgment for The Order of Railroad Telegraphers in Civil Action No. 8708(2) would impair, impede and hamper the orderly application of said agreement by plaintiff Missouri-Kansas-Texas Railroad Company of Texas and would be productive of more disputes between that plaintiff and defendant The Order of Railroad Telegraphers; and that there is a possibility of conflicting decisions in Civil Actions Nos. 4572 and 8708(2) as to the proper construction and application of said agreement and the effect to be given the custom and practice under said agreement;

And it appearing to the Court that Awards 3932, 3933, 3934, 4735, 5014, and the Orders accompanying those awards, and the demands for the enforcement of those awards and orders, and the suits filed to enforce those awards and orders, have disrupted the peaceful relations between plaintiffs and their employees and have created a state of unrest among said employees;

And it appearing to the Court that plaintiffs have no adequate remedy at law and that they, and each of them, will suffer irreparable injury, loss, and damage, unless an injunction is issued in this cause;

And it appearing to the Court that plaintiffs are entitled to have the Board decide, in a single proceeding of which due notice and an opportunity to be heard are given to all employees and labor organizations involved in the dispute, whether plaintiffs' employees who are subject to plaintiffs' agreement with defendant Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes, or plaintiffs' employees who are subject to plaintiffs' agreement with defendant The Order of Railroad Telegraphers, have the right to perform station clerical work;

And it appearing to the Court that it is the settled custom and practice of the Board in disputes of this character:

(a) Not to give notice of the filing of a claim to anyone except the claimant and the railroad named in the claim;

(b) Not to permit anyone, except the claimant and the railroad named in the claim, to file papers or other documents with the Board;

(c) Not to give notice of hearing to anyone except the claimant and the railroad named in the claim;

(d) Not to permit anyone, except those to whom the Board has given notice, to be present at the hearing or to participate in the hearing;

(e) Not to permit anyone to intervene; and

(f) Not to recognize anyone as a party to a proceeding except the claimant and the railroad named in the claim, and not to make anyone else a party to a proceeding, even when requested to do so;

And it appearing to the Court that the settled custom and practice of the Board

is caused by the position of the labor members of the Board that only the claimant and the railroad named by the claimant should be given notice and an opportunity to be heard;

And it appearing to the Court that the position of the labor members of the Board is the result of a policy fixed by agreement between the chief executives of the railroad labor organizations who comprise the Railway Labor Executives' Association and who select, control and discipline the labor members of the Board;

And it appearing to the Court that the carrier members of the Board are opposed to its settled custom and practice and that it is their position that the Board should give notice and an opportunity to be heard to all employees and labor organizations involved in disputes submitted to the Board;

And it appearing to the Court that the conflicting positions of the labor members and of the carrier members of the Board make it impossible for the Board to decide the issue as to notice and hearing without the aid of referees;

And it appearing to the Court that referees appointed to break deadlocks as to notice and hearing are divided in their opinions; that some agree with the position of the labor members of the Board and render awards on the merits without giving notice and opportunity to be heard; and that others agree with the position of the carrier members of the Board but render awards dismissing the claims, without prejudice, instead of ordering that notice and hearing be given;

And it appearing to the Court that these divergent views and actions of the Board members and the referees have produced an administrative deadlock, stalemate and frustration on the Board, and that the carrier members have asked for judicial guidance;

And it appearing to the Court that the Board has ignored and continues to ignore repeated court decisions invalidating its awards and orders because no notice and opportunity to be heard were given to employees and labor organizations involved in disputes;

And it appearing to the Court that the purpose of the Railway Labor Act to provide for the prompt and orderly settlement of all disputes is thus defeated;

And it appearing to the Court that Awards 3932, 3933, 3934, and 4735, and the accompanying Orders, and the conflicting demands made by BRC and ORT upon MKT that it comply with those awards and orders, have created a state of unrest among the employees of MKT who are represented by BRC and ORT, and that those awards and orders have disrupted the peaceful relations between MKT and those employees;

And it appearing to the Court that a mandatory injunction should be issued, compelling the Board and its members to perform their duty to give notice and an opportunity to be heard to all employees and labor organizations involved in disputes before the Board;

It is therefore ordered, adjudged and decreed that Awards 3932, 3933, 3934, 4735, and 5014, of the National Railroad Adjustment Board, Third Division, and the Orders accompanying those awards, are null and void;

It is further ordered, adjudged and decreed that the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes, its Subordinate Units, System Boards of Adjustment, System Committees, District Boards of Adjustment, Terminal Boards of Adjustment, Lodges, members, officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, be and they are hereby enjoined and restrained from prosecuting against Missouri-Kansas-Texas Railroad Company and Missouri-Kansas-Texas Railroad Company of Texas, or either of them,

Civil Action No. 7179(3), entitled "System Committee of the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes, A. J. Pickett,

General Chairman, v. Missouri-Kansas-Texas Railroad Company and Missouri-Kansas-Texas Railroad Company of Texas", pending in the District Court of the United States for the Eastern District of Missouri, Eastern Division,

and from prosecuting against Missouri-Kansas-Texas Railroad Company and Missouri-Kansas-Texas Railroad Company of Texas, or either of them,

Civil Action No. 7227(3), entitled "System Committee of the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes, A. J. Pickett, General Chairman, v. Missouri-Kansas-Texas Railroad Company and Missouri-Kansas-Texas Railroad Company of Texas", pending in the District Court of the United States for the Eastern District of Missouri, Eastern Division,

and from prosecuting any other suit or suits or taking any other action against said Railroad Companies, or either of them, to enforce Awards 3932, 3933, and 3934, and the Orders accompanying those awards, or any of those awards and orders; and from filing with or prosecuting against said Railroad Companies, or either of them, any claim or claims predicated upon any of said awards and orders;

It is further ordered, adjudged and decreed that The Order of Railroad Telegraphers, its Subordinate Divisions, System Divisions, Local Divisions, Local Boards of Adjustment, members, officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, be and they are hereby enjoined and restrained from prosecuting against Missouri-Kansas-Texas Railroad Company and Missouri-Kansas-Texas Railroad Company of Texas, or either of them,

Civil Action No. 4572, entitled "The Order of Railroad Telegraphers v. Missouri-Kansas-Texas Railroad Company of Texas", pending in the District Court of the United States for the Northern District of Texas, Dallas Division,

and from prosecuting against Missouri-Kansas-Texas Railroad Company and Missouri-Kansas-Texas Railroad Company of Texas, or either of them,

Civil Action No. 8708(2), entitled "The Order of Railroad Telegraphers v. Missouri-Kansas-Texas Railroad Company", in the District Court of the United States for the Eastern District of Missouri, Eastern Division,

and from prosecuting any other suit or suits or taking any other action against said Railroad Companies, or either of them, to enforce Awards 4735 and 5014, and the Orders accompanying those awards, or any of those awards and orders; and from filing with or prosecuting against said Railroad Companies, or either of them, any claim or claims predicated upon any of said awards and orders;

It is further ordered, adjudged and decreed that the National Railroad Adjustment Board, Third Division, and C. P. Dugan, J. E. Kemp, R. M. Butler, W. H. Castle, E. T. Horsley, J. H. Sylvester, Gerald Orndorff, Roger Sarchet, C. R. Barnes, and J. W. Whitehouse, as members of said Board, and their successors in office, be and they are hereby commanded:

(1) To reopen Dockets CL–3714, CL–3715, CL–3716, TE–4540, and TE–4953;

(2) To consolidate Dockets CL–3714, CL–3715, CL–3716, TE–4540, and TE–4953, for a single hearing, and to hold such hearing;

(3) To give notice of such consolidation and of such hearing to Missouri-Kansas-Texas Railroad Company and Missouri-Kansas-Texas Railroad Company of Texas; to the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes, to The Order of Railroad Telegraphers; to the employees of Missouri-Kansas-Texas Railroad Company who

held the positions of Telegrapher-Cashier at Altus, Oklahoma, and Telegrapher-Cashier at Chanute, Kansas; when those positions were abolished pursuant to Awards 3932 and 3933, and the Orders accompanying those awards; to the employee of Missouri-Kansas-Texas Railroad Company of Texas who held the position of Telegrapher-Cashier at Lockhart, Texas, when that position was abolished pursuant to Award 3933 and the Order accompanying that award; to the employees of Missouri-Kansas-Texas Railroad Company holding the following positions: Agent-Yardmaster, and Telegrapher-Clerk at Altus, Oklahoma; Agent and Telegrapher-Clerk at Atoka, Oklahoma; Agent, and Telegrapher-Clerk at Chanute, Kansas; Agent-Telegrapher at Junction City, Kansas; night clerk at Coffeyville, Kansas; to the employees of Missouri-Kansas-Texas Railroad Company of Texas holding the following positions: Agent-Telegrapher, and General Clerk, at Lockhart, Texas; and Agent, Telegrapher-Cashier, and Telegrapher-Clerk at Stamford, Texas;

(4) To permit plaintiffs, the labor organizations, and the employees specified in paragraph number (3) of this decree to file papers and other documents in consolidated Dockets CL–3714, CL–3715, CL–3716, TE–4540, and TE–4953;

(5) To give plaintiffs, the labor organizations, and the employees specified in paragraph number (3) of this decree an opportunity to be heard in the consolidated hearing; and

(6) To consider the agreement between plaintiffs and the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes, the agreement between plaintiffs and The Order of Railroad Telegraphers, and the custom and practice under those agreements, in making an award and order in consolidated Dockets CL–3714, CL–3715, CL–3716, TE–4540, and TE–4953.

The Findings of Fact and Conclusions of Law which the Court has rendered in this cause are hereby affirmed and made a part of this decree.

It is further ordered, adjudged and decreed that all costs be and they are hereby taxed against defendant The Order of Railroad Telegraphers and defendant Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employes.